NUMBER 13-05-142-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


BARRAND, INC., ET AL., Appellants


v.


WHATABURGER, INC., Appellee

 


On appeal from the 105th District Court of Nueces County, Texas.


 


O P I N I O N



Before Justices Hinojosa, Rodriguez, and Garza


Opinion by Justice Garza
 

This appeal is taken from a final summary judgment entered in favor of
Whataburger, Inc. against BurgerWorks, Inc., Carmel Davis, and Denise Sumrall
(collectively "BurgerWorks") and against Barrand, Inc., John R. Brown, and Barbara Brown
(collectively "Barrand"). On appeal, BurgerWorks and Barrand contend that the trial court
erred in granting summary judgment in favor of Whataburger. We hold that Whataburger
established its entitlement to judgment as a matter of law on its claim for declaratory relief
and the counterclaims asserted against it. We further hold that BurgerWorks and Barrand
failed to demonstrate that Whataburger was not entitled to summary judgment as a matter
of law. Accordingly, we affirm the judgment of the trial court.

I. Background 

This is a franchise dispute. Whataburger operates fast food restaurants specializing
in the sale of hamburgers and related products using Whataburger's proprietary marks and
information ("the Whataburger System"). Through various franchise agreements and other
contracts, Whataburger has also authorized other parties to participate in the Whataburger
System. Although considered a successful commercial endeavor by those involved,
discord developed among the participants of the Whataburger franchise system following
the discovery of an ostensibly improper rebate program between Whataburger and the
suppliers that sell goods to Whataburger's franchisees. This discovery led to a lawsuit by
various franchisees, including BurgerWorks and Barrand, who sought restitution and
punitive damages for what they perceived to be an illegal kick-back scheme. The parties
settled the lawsuit before trial.

This case is a dispute over the terms of the settlement agreement. Because each
franchisee involved in the lawsuit executed an individual settlement agreement with
Whataburger, this case involves multiple contracts with different settlement amounts. In
large part, however, the contracts are functionally equivalent, using the same language and
terms. For ease of reference, we will refer to the agreements collectively as the
"Settlement Agreement." 

The Settlement Agreement provides cash reimbursements to the franchisees. It
also includes an agreement to amend existing franchise agreements. Pursuant to the
Settlement Agreement, Whataburger and the franchisees executed new franchise
agreements (collectively "the Modified Franchise Agreement") with new terms, including
new terms of duration. Under the Modified Franchise Agreement, the franchisees are
granted the right to operate restaurants under the Whataburger System for an initial ten-year period. At the conclusion of the initial ten-year period, the franchisees have the option
to renew their franchise agreements for an additional five-year period. At the conclusion
of the five-year period, the franchisees may elect to renew their agreements for an
additional five-year period. Neither the Settlement Agreement nor the Modified Franchise
Agreement contains terms for contract renewal beyond the two optional five-year terms. 
Thus, the total duration possible under the contracts is twenty years. 

In 2002, Whataburger sued the Franchisees for a declaratory judgment. 
Whataburger's live petition requested that the trial court make the following judicial
declarations: (1) "that Whataburger has no legal obligation to grant any new franchise
locations and/or franchise agreements pursuant to the Settlement Agreements, or
otherwise"; (2) "that Whataburger has no obligation to grant new franchise agreements to
the Franchise Defendants relative to their current locations at the end of their contractual
terms"; and (3) "that Whataburger has fulfilled all of its obligations under the Settlement
Agreements." 

The Franchisees responded and asserted counterclaims against Whataburger for
declaratory relief, breach of contract, breach of the implied covenant of good faith and fair
dealing, promissory estoppel, fraud, and negligent misrepresentation. 

In a traditional motion for summary judgment, see Tex. R. Civ. P. 166a,
Whataburger argued that the Settlement Agreement is unambiguous and requested
summary judgment on the following grounds: (1) "[n]o provision of the Settlement
Agreement obligates or requires Whataburger to grant new franchise locations and/or
franchise agreements"; (2) "[n]o provision of the Settlement Agreement obligates or
requires Whataburger to grant new franchise agreements relative to their current locations
at the end of the contractual terms"; (3) "Whataburger has fulfilled all of its obligations
under the Settlement Agreement"; and (4) "Whataburger has complied with its obligations
under the Area Development Agreement and the Area Development Agreement does not
require Whataburger to grant new store development to Barrand outside of the defined
Development Area." The motion also argued that "summary judgment for Whataburger will
necessarily dispose of all claims and counterclaims . . . ." 

BurgerWorks and Barrand filed written responses to Whataburger's motion for
summary judgment. In addition, Barrand filed a cross-motion for traditional summary
judgment. Barrand's motion asked that the trial court declare that "the [Settlement]
Agreement must be read to require . . . [Whataburger] not to unreasonably withhold its
consent to new franchise locations requested by . . . [the Franchisees] and grant such
franchises on the form of the Modified Franchise Agreement and consistent with all terms
and provisions of the Settlement Agreement." 

The trial court granted the motion filed by Whataburger and denied the motion filed
by Barrand. The trial court subsequently entered a final judgment stating that
Whataburger's motion for summary judgment was granted in its entirety as to the
affirmative claims made by Whataburger and the counterclaims asserted by BurgerWorks
and Barrand. 

BurgerWorks and Barrand now appeal to this Court. They have filed separate
briefs, raising substantially similar issues. They both complain that summary judgment for
Whataburger was improper. In doing so, they contend that the trial court erred in
interpreting the terms of the Settlement Agreement and the Modified Franchise Agreement. 
They contend that the contracts obligate Whataburger to renew franchise agreements for
existing restaurants and to grant requests for new franchise locations that are reasonable. 
They also raise an alternative argument that the contracts are ambiguous, thus precluding
summary judgment for Whataburger. 

For purposes of this opinion, the briefs are different in at least one respect
necessitating individual treatment: the brief for BurgerWorks argues that summary
judgment was improper because fact issues exist on several affirmative defenses asserted
by BurgerWorks, whereas Barrand's brief argues that summary judgment was improper
because fact issues exist on Barrand's counterclaims. These arguments will be addressed
separately. Finally, before proceeding to the merits of the appeal, we note that the issues
raised by BurgerWorks and Barrand will be consolidated and addressed in the following
order: (1) whether the trial court erred in granting summary judgment on Whataburger's
claim that it has no obligation to renew contracts for existing restaurants; (2) whether the
trial court erred in granting summary judgment on Whataburger's claim that it has no
obligation to grant requests for new franchise locations; (3) whether the trial court erred in
granting summary judgment on Whataburger's claim that it has no continuing obligations
under the Settlement Agreement; (4) whether the trial court erred in granting summary
judgment for Whataburger on Barrand's counterclaims; (5) whether the affirmative
defenses asserted by BurgerWorks present fact issues precluding summary judgment for
Whataburger; and (6) whether the trial court erred in excluding testimony by a damages
expert for BurgerWorks and Barrand. 

II. Standard of Review

Appellate courts review summary judgments de novo. Natividad v. Alexsis, Inc., 875
S.W.2d 695, 699 (Tex. 1994); Tex. Commerce Bank-Rio Grande Valley, N.A. v. Correa,
28 S.W.3d 723, 726 (Tex. App.--Corpus Christi 2000, pet. denied). When both sides
move for summary judgment and the trial court grants one side's motion without specifying
its reasons, as in this case, the appellate court must review the motions and evidence and
render the judgment that the trial court should have rendered. Commissioners Court v.
Agan, 940 S.W.2d 77, 81 (Tex. 1997).

III. Analysis of Summary Judgment on Whataburger's Action for
Declaratory Judgment


The interpretation of an unambiguous contract is a question of law for the court to
decide. N. M. Uranium, Inc. v. Moser, 587 S.W.2d 809, 814 (Tex. Civ. App.--Corpus
Christi 1979, writ ref'd n.r.e.); see also Perry v. Houston Indep. Sch. Dist., 902 S.W.2d 544,
547 (Tex. App.--Houston [1st Dist.] 1995, writ dism'd w.o.j.). Unambiguous contracts are
enforced as written. See, e.g., Heritage Res., Inc. v. Nationsbank, 939 S.W.2d 118, 121
(Tex. 1996). When a contract contains an ambiguity, the granting of a motion for summary
judgment is improper because the interpretation of the instrument is a question of fact for
the jury. Reilly v. Rangers Mgmt., Inc., 727 S.W.2d 527, 529 (Tex. 1987). Whether a
contract is ambiguous is a question of law. See Nat'l Union Fire Ins. Co. v. CBI Indus.,
Inc., 907 S.W.2d 517, 520 (Tex. 1995) (per curiam); see also Vermillion Constr. Co. v. Fid.
& Deposit Co., 526 S.W.2d 744, 748 (Tex. Civ. App.--Corpus Christi 1975, no writ). If a
written contract is worded so that it can be given a definite or certain legal meaning, then
it is unambiguous. Nat'l Union, 907 S.W.2d at 520; see also Coker v. Coker, 650 S.W.2d
391, 393 (Tex. 1983); Universal CIT Credit Corp. v. Daniel, 243 S.W.2d 154, 157 (Tex.
1951). An ambiguity does not arise simply because the parties offer conflicting
interpretations. Lopez v. Munoz, Hockema & Reed, 22 S.W.3d 857, 861 (Tex. 2000);
Kelley-Coppedge, Inc. v. Highlands, 980 S.W.2d 462, 465 (Tex. 1998). Rather, a contract
is ambiguous only if two or more meanings are genuinely possible after application of the
pertinent rules of interpretation to the face of the instrument. Daniel, 243 S.W.2d at 157. 
Parol evidence is not admissible for the purpose of creating an ambiguity. Highlands, 980
S.W.2d at 464. Only when a contract is first determined to be ambiguous may the court
admit extraneous evidence to determine the true meaning of the instrument. Id.

In construing a contract, we must ascertain and give effect to the parties' intentions
as expressed in the document. J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex.
2003). We consider the entire writing and attempt to harmonize and give effect to all the
provisions of the contract by analyzing the provisions with reference to the whole
agreement. Id. We construe contracts "from a utilitarian standpoint bearing in mind the
particular business activity sought to be served" and "will avoid when possible and proper
a construction which is unreasonable, inequitable, and oppressive." Reilly, 727 S.W.2d at
530. 

A. New Contracts for Existing Restaurants

As noted above, Whataburger moved for summary judgment on the ground that
"[n]o provision of the Settlement Agreement obligates or requires Whataburger to grant
new franchise agreements relative to their current locations at the end of the contractual
terms." 

The relevant language of the Settlement Agreement reads as follows:

 As part of the consideration for settling disputes between
WHATABURGER and FRANCHISE HOLDER, WHATABURGER and
FRANCHISE HOLDER agree that each Franchise Agreement granted by
WHATABURGER to FRANCHISE HOLDER shall be amended and revised
to provide the following:


 A. Each Franchise Agreement shall be amended to provide that
it shall have a new primary term of ten (10) years with two (2) five (5) year
options in favor of FRANCHISE HOLDER to extend the term of the
Franchise Agreement. The new ten (10) year primary term shall commence
upon the date of the Settlement Agreement. 

 * * * 

 

K. WHATABURGER agrees to give FRANCHISE HOLDER written
notice not less than ninety (90) days nor more than one hundred and twenty
(120) days prior to the end of the primary term or first option term of each
Franchise Agreement as to the forthcoming expiration of such Franchise. 
FRANCHISE HOLDER shall have the right to extend the term of the
Franchise Agreement by notifying WHATABURGER in writing not less than
thirty (30) days prior to the expiration of the term of such Franchise
Agreement. 


The foregoing provisions were incorporated into the franchise agreements that
existed at the time of the Settlement Agreement. These are now referred to collectively
as the "Modified Franchise Agreement." The provisions quoted above are the only ones
that directly address the renewal of existing franchise agreements. They specifically give
the franchisees the option to renew their contracts, but they do not contemplate perpetual
renewal. The option to renew is expressly limited to two consecutive terms of five years. 
Notably, Whataburger has no right to refuse contract renewal. Whataburger is obligated
to extend the contracts upon written notice. In other words, the franchisees may renew
their contracts beyond the 10-year primary term for two 5-year options without the consent
or approval of Whataburger. 

BurgerWorks and Barrand contend that the Settlement Agreement and Modified
Franchise Agreement give them the right to renew their contracts beyond the time periods
specified above. They rely on the following clause in the Settlement Agreement, which
also appears in the Modified Franchise Agreement:

Section II. N. WHATABURGER agrees that it will not unreasonably
withhold its consent or approval to any action requiring
its consent or act unreasonably with respect to any
provision of the Franchise Agreements. 

BurgerWorks and Barrand contend that the above provision applies to
Whataburger's decision to execute or not execute new contracts at the end of the optional
renewal periods detailed above. If so, Whataburger cannot "unreasonably withhold its
consent or approval" to requests for new contracts. We disagree. 

The contract interpretation advanced by BurgerWorks and Barrand does not give
effect to the parties' intentions as expressed in the Settlement Agreement and the Modified
Franchise Agreement. J.M. Davidson, 128 S.W.3d at 229. In construing the contracts, we
must give effect to all their provisions by analyzing the provisions with reference to the
entire agreement. Id. As a whole, the Settlement Agreement and Modified Franchise
Agreement do not contemplate franchise agreements running into perpetuity. Similarly,
they do not contemplate an open-ended, indefinite duration to be determined and fixed by
the franchisees at some later date. To the contrary, the Settlement Agreement and
Modified Franchise Agreement contain a very specific provision stating that the franchise
agreements will be effective for 10 years. They then give the franchisees a limited right to
extend their contracts beyond the 10-year term. Thus, to the extent the Settlement
Agreement and Modified Franchise Agreement contemplate contract renewal, they do not
make renewal dependent on the "consent or approval" of Whataburger. They also do not
leave the renewal period open-ended or indefinite in a manner that would create a right to
perpetual renewal. 

We cannot interpret the Settlement Agreement and Modified Franchise Agreement
in the manner suggested by BurgerWorks and Barrand without effectively nullifying their
renewal provisions. Doing so would violate our long-standing mandate "to harmonize and
give effect to all the provisions of the contract so that none will be rendered meaningless." 
Coker, 650 S.W.2d at 393. The interpretation would also be inequitable and oppressive
to Whataburger, which would be stripped of its rights as a franchisor to contractually
regulate use of the Whataburger System by electing to renew or not to renew expiring
contracts. This result is contrary to the express intent of the Settlement Agreement and
Modified Franchise Agreement. The contracts advance a business activity by granting a
limited number of years in which the franchisees may conduct business using the
Whataburger System. It would be unreasonable to read the Settlement Agreement and
Modified Franchise Agreement in a manner inconsistent with the express intent of granting
only a limited right to do business using the Whataburger System. 

Likewise, it would be unreasonable to interpret the Settlement Agreement and
Modified Franchise Agreement in a manner that neglects the provision relied upon by
BurgerWorks and Barrand. See id. That provision need not be disregarded in order to
conclude that the Settlement Agreement and Modified Franchise Agreement are capable
of only one reasonable interpretation on the issue contract renewal. There are numerous
provisions in the Modified Franchise Agreement that require Whataburger's "consent or
approval." These deal mostly with how the franchisees are expected to operate their
Whataburger Restaurants and the amount and quality of training they must complete to
do business using the Whataburger System. For instance, the franchisees must "use,
promote and offer for sale only those products and services as meet the standards and
specifications prescribed by Franchisor . . . ." Similarly, the franchisees must "attend and
complete to Franchisor's satisfaction . . . the current training program . . . ." These
examples demonstrate that the clause has a continuing purpose and function, though not
the purpose and function suggested by BurgerWorks and Barrand. 

In construing the parties' written agreements, we have conducted our analysis by
viewing the agreements from "a utilitarian standpoint bearing in mind the particular
business activity sought to be served." See Reilly, 727 S.W.2d at 530. We conclude that
the Settlement Agreement and Modified Franchise Agreement are worded so that they can
be given a definite and certain legal meaning. They are therefore unambiguous. See Nat'l
Union, 907 S.W.2d at 520. We cannot consider parol evidence to create an ambiguity or
otherwise use extrinsic evidence to alter the unambiguous meaning of the contracts. See
Highlands, 980 S.W.2d at 464. No provision obligates Whataburger to grant new franchise
agreements relative to current locations at the end of the contractual terms. We therefore
hold that Whataburger established its entitlement to judgment as a matter of law on its
second ground for summary judgment.

B. New Contracts for New Restaurants 

Whataburger also moved for summary judgment on the ground that "[n]o provision
of the Settlement Agreement obligates or requires Whataburger to grant new franchise
locations and/or franchise agreements." In making its argument to the trial court,
Whataburger emphasized that the issue could be resolved properly by summary judgment
because it was strictly an issue of interpreting an unambiguous contract. Whataburger
argued that it was entitled to summary judgment as a matter of law because there is no
provision in the Settlement Agreement granting the franchisees a right to new restaurants. 
BurgerWorks and Barrand responded with evidence and arguments, which, according to
them, precluded summary judgment. 

We address the evidence first. Only if a contract is first determined to be
ambiguous may the court consider the parties' interpretation and admit extraneous
evidence to determine the true meaning of the instrument. Id. Thus, we begin, as we did
above, by considering the contractual documents submitted as summary judgment
evidence. These are the Settlement Agreement and the Modified Franchise Agreement. Although there is no clause or provision expressly granting a right to new franchise
locations, BurgerWorks and Barrand argue that the reasonableness clause in the
Settlement Agreement operates to give them such a right, especially considering the
following provisions which are also located in the Settlement Agreement:

Section III. A. The initial fee for all new Franchise Agreements granted
by WHATABURGER to FRANCHISE HOLDER, its
heirs, successors, or assigns, shall not exceed one
thousand dollars ($1000) for each new Franchised
Restaurant. 


Section III. D. All new Franchise Agreements between Whataburger,
its successors and assigns, and FRANCHISE
HOLDER, its heirs, personal representatives,
successors and assigns, shall, unless otherwise agreed
upon by the parties, contain the same terms as the
Franchise Agreements, as herein amended, between
WHATABURGER and FRANCHISE HOLDER. If
FRANCHISE HOLDER has more than one form of
Franchise Agreement, then the latest signed Franchise
Agreement shall be the applicable form, as herein
amended, for new franchises. 


Section III. E. The parties required to sign any new or amended
Franchise Agreements on behalf of the FRANCHISE
HOLDER shall be as follows . . . . 


 Section III. F. For purposes of determining the commencement of the
franchise term for new Franchise Agreements, such
new Franchise Agreements shall be effective from the
date the Franchise Agreement is fully signed, but the
term of the Franchise Agreement shall commence upon
the Franchised Restaurant opening for business with
the public.

 

We agree that the above-quoted language contemplates new franchise restaurants. 
That is, the language addresses new contracts for new restaurants and not solely new or
amended contracts for existing restaurants. Nevertheless, we disagree that the above-quoted language gives BurgerWorks and Barrand a contractual right to new restaurants. 
As in our analysis above regarding contract renewal for existing restaurants, our objective
is to interpret the agreements in a manner that will "harmonize and give effect to all the
provisions of the contract so that none will be rendered meaningless." Coker, 650 S.W.2d
at 393. To this end, we acknowledge the provisions relied upon by BurgerWorks and
Barrand and note that the provisions have a clear purpose and function, though they are
not the purpose and function suggested by BurgerWorks and Barrand. 

The Settlement Agreement is divided into three sections. The first covers "Payment
Terms of Settlement." As the title suggests, the section provides the franchisees with
restitution for the rebate dispute. The second section covers "Franchise Agreement
Amendments." Like the first section, it is "part of the consideration for settling the [rebate]
dispute." The section amends the terms of existing franchise agreements and includes,
among other things, a new term of duration, a new definition of "gross sales," and new
"monthly royalty" terms. The third section of the Settlement Agreement is titled "General
Provisions." With the exception of the reasonableness clause, all of the provisions relied
upon by BurgerWorks and Barrand are located in the third section.

We begin with the reasonableness clause, which is located in the second section
of the Settlement Agreement titled "Franchise Agreement Amendments." Our initial task
is to determine the scope of the clause. This is critical because the clause is at the center
of the arguments advanced by BurgerWorks and Barrand. We must decide whether the
clause applies to (1) only the Settlement Agreement, (2) only the Modified Franchise
Agreement, (3) both the Settlement Agreement and the Modified Franchise Agreement,
or (4) all dealings between Whataburger and its franchisees. 

Again, the clause reads as follows:


 Section II. N. WHATABURGER agrees that it will not unreasonably withhold
its consent or approval to any action requiring its consent or
act unreasonably with respect to any provision of the Franchise
Agreements. (1) We start with the last words of the clause. The phrase "with respect to any
provision of the Franchise Agreements" appears to limit the scope of the clause to the
Modified Franchise Agreement. Nevertheless, BurgerWorks and Barrand have raised
arguments against such an interpretation:


Section II (N) requires that Whataburger "will not unreasonably withhold its
consent or approval to any action requiring its consent" and also
independently requires Whataburger to "not act unreasonably with respect
to any provision of the Franchise Agreements." 


Brief of BurgerWorks p.17. 

 

The phrase relied upon by Whataburger - "with respect to any provision of
the Franchise Agreements" - simply qualifies Whataburger's agreement not
"to act unreasonably" and in no way limits or qualifies Whataburger's
preceding agreement "that it will not unreasonably withhold its consent or
approval to any action requiring its consent." 


Reply Brief of Barrand p.15 (internal citations omitted). (2)

 Although these arguments are well-taken, they only resolve part of the issue before
us. That is, BurgerWorks and Barrand suggest that we should interpret the
reasonableness clause as imposing two concomitant standards of conduct: (1) to not
unreasonably withhold consent or approval to any action requiring consent; and (2) to not
act unreasonably with respect to any provision of the Franchise Agreements. Under this
interpretation, the second standard of conduct applies only to the Franchise Agreement. 
This leaves the first standard. 

 According to BurgerWorks and Barrand, the first standard applies literally to any
action requiring consent. Since entering new contracts requires consent, the standard
applies to new contracts. Based on this argument, they contend that Whataburger cannot
unreasonably withhold its consent or approval to their requests to open new restaurants. 
If so, summary judgment was improper because Whataburger has a continuing obligation
to grant new franchise locations. 

 Although the argument is sound when viewing the reasonableness clause in
isolation, it becomes less tenable when considering the context in which the clause
appears. The clause is located in two places: (1) the Settlement Agreement; and (2) the
Modified Franchise Agreement. In the Settlement Agreement, the clause appears in the
section titled "Franchise Agreement Amendments." It is preceded by the following
language:


As part of the consideration for settling disputes between WHATABURGER
and FRANCHISE HOLDER, WHATABURGER and FRANCHISE HOLDER
agree that each Franchise Agreement granted by WHATABURGER to
FRANCHISE HOLDER shall be amended and revised to provide the
following . . . .


 In accordance with the above provision, the parties executed the Modified Franchise
Agreement, which contains the reasonableness clause quoted in footnote 16. Thus,
although the reasonableness clause is located in both the Settlement Agreement and the
Modified Franchise Agreement, those documents indicate an express intent to limit the
scope of the clause to the Modified Franchise Agreement. In other words, while it is true
that the Settlement Agreement contains the reasonableness clause, it is also true that the
clause is preceded by language expressly stating that the clause is meant to amend the
Modified Franchise Agreement. This leads us to conclude that the scope of the
reasonableness clause is limited to the Modified Franchise Agreement. 

 This does not mean the clause has no purpose or function. As noted above in our
analysis of whether Whataburger must renew existing contracts, there are numerous
provisions in the Modified Settlement Agreement that require Whataburger's "consent or
approval." There are express provisions that specifically contemplate situations in which
the parties cannot go forward with their contracts unless Whataburger agrees that the
franchisees have met certain expectations. These provisions deal mostly with how the
franchisees are expected to operate their Whataburger Restaurants and the amount and
quality of training the franchisees must complete to do business using the Whataburger
System. The Modified Franchise Agreement emphasizes the importance of these details:


III. G. Franchisee understands and acknowledges that each and every
detail of the Whataburger System is important to Franchisor, to Franchisee,
and to other licensed franchisees in order to develop and maintain high and
uniform standards of quality and service and hence to protect the reputation
and goodwill of the Whataburger System. 


 Construing the entire agreement from "a utilitarian standpoint bearing in mind the
particular business activity sought to be served," we conclude that the express intent of the
parties' agreement is for Whataburger to abide by the reasonableness clause as it relates
to actions requiring its consent or approval under the Modified Franchise Agreement. See
Reilly, 727 S.W.2d at 530. We further conclude that the Modified Franchise Agreement
does not obligate Whataburger to award contracts for new restaurants. Our conclusion is
supported by the following language in the Modified Franchise Agreement:


The parties expressly agree that the grant and the fee provided for in this .
. . [Modified Franchise Agreement] relate solely to the location described in
Paragraph I.A. hereof, and afford Franchisee no rights regarding such other
franchises, if any, as Franchisor in its sole discretion may elect to make
available to Franchisee in the future. 


 We have concluded that the Modified Franchise Agreement does not obligate
Whataburger to award new contracts for new restaurants. Thus, if such an obligation
exists, it must arise from the Settlement Agreement. 

 Having reviewed the Settlement Agreement in its entirety, we conclude that the
provisions cited by BurgerWorks and Barrand do not obligate Whataburger to execute new
contracts for new restaurants. The Settlement Agreement states that all new franchise
agreements shall contain the same terms as those in the Settlement Agreement. The
Settlement Agreement does not state that Whataburger is obligated to execute new
contracts for new restaurants. This distinction is critical. Under the Settlement Agreement,
the parties agreed in principle that new restaurants will be governed by the same terms as
existing restaurants (i.e., the Modified Franchise Agreement), but they did not agree on
how many new restaurants would be opened, where the new restaurants would be built,
or when they would open for business. These are all material terms that remain open for
further negotiation. 

 It is well settled law that when an agreement leaves material matters open for future
adjustment and agreement that never occur, it is not binding upon the parties and merely
constitutes an agreement to agree. Fort Worth Indep. Sch. Dist. v. City of Fort Worth, 22
S.W.3d 831, 846 (Tex. 2000). To the extent it contemplates new restaurants, the
Settlement Agreement is an agreement that, if and when, the parties agree to open a new
restaurant, their contract for the new restaurant will contain the same terms as the Modified
Franchise Agreement. Because the operation of this agreement is contingent on a future,
additional agreement (i.e., an agreement to open a new restaurant), we conclude that
Whataburger has no obligation to execute new contracts for new restaurants. See id. 
Accordingly, we hold that Whataburger established its entitlement to judgment as a matter
of law on its first ground for summary judgment. 

C. Fulfillment of Obligations under the Settlement Agreement 

 As noted above, Whataburger also moved for summary judgment on the ground that
it "has fulfilled all of its obligations under the Settlement Agreement." Unlike the first two
grounds for summary judgment, which involved issues of contract construction, this third
ground for summary judgment required the trial court, and consequently this Court, to look
beyond the parties' agreement to determine if Whataburger had performed its obligations. 

 Attached to Whataburger's motion for summary judgment is an affidavit by John M.
McLellan. Mr. McLellan states in his affidavit that he was "involved in negotiating" the
Settlement Agreement. He also makes the following statements:


5. The Settlement Agreement was executed in individual forms with each
franchisee at the time . . . . Each of the executed Settlement Agreements
incorporated the same terms and language, except for the amount of the
settlement, the identity of the parties, and with regard to certain franchisees,
confidentiality and royalty offset provisions that are . . . not subject to this
litigation. 


6. Whataburger has paid all settlement monies to the franchisees and
has amended all of its franchise agreements that were in existence on the
effective date of the Settlement Agreement in accordance with same. 
Additionally, Whataburger and the franchisees have exchanged releases
pertinent to the supplier rebate dispute that gave rise to this lawsuit. 

 

 BurgerWorks and Barrand have challenged this ground for summary judgment on
appeal. They argue that Whataburger has a continuing obligation under the Settlement
Agreement to renew contracts for existing restaurants and to execute new contracts for
new restaurants. Again, these arguments rely largely on the reasonableness clauses
found in the Settlement Agreement and Modified Franchise Agreement. We have already
determined that the clauses operate only within the scope of the Modified Franchise
Agreement. We have also determined that Whataburger has no obligation to renew
existing contracts or to execute new contracts. This is true under both the Settlement
Agreement and the Modified Franchise Agreement. We therefore conclude that executing
new contracts, whether for old or new restaurants, is not a continuing obligation for
Whataburger under the Settlement Agreement. 

 In addition, BurgerWorks argues that Whataburger's continuing obligations under
the Settlement Agreement include "those provisions [that] permitted franchisees to transfer
franchises without Whataburger's prior consent, reduced each franchisees' monthly royalty,
required that Whataburger act reasonably, and importantly, required that all new franchise
agreements contain the terms of the Settlement Agreement." Brief of BurgerWorks
p.32. 

 Of the foregoing provisions, all but one is located in the section of the Settlement
Agreement titled "Franchise Agreement Amendments." These provisions are preceded by
the following language: 


As part of the consideration for settling disputes between WHATABURGER
and FRANCHISE HOLDER, WHATABURGER and FRANCHISE HOLDER
agree that each Franchise Agreement granted by WHATABURGER to
FRANCHISE HOLDER shall be amended and revised to provide the
following . . . .


 The affidavit submitted by Whataburger states that "Whataburger has . . . amended
all of its franchise agreements that were in existence on the effective date of the
Settlement Agreement in accordance with same." We have reviewed the Modified
Franchise Agreement and note that it includes each of the terms cited by BurgerWorks,
with the exception of the provision that all new franchise agreements contain the terms of
the Settlement Agreement. Aside from that term, we conclude that the provisions cited by
BurgerWorks remain in effect through the Modified Franchise Agreement rather than the
Settlement Agreement. They therefore do not constitute continuing obligations under the
Settlement Agreement. 

 Finally, we address the provision that all new franchise agreements will contain the
terms of the Settlement Agreement. This provision did not become part of the Modified
Franchise Agreement. It exists only in the Settlement Agreement. Nevertheless, we have
already concluded that it is not binding on Whataburger because it is dependent on the
parties' agreement to execute new contracts, whether for old or new restaurants. As an
agreement to agree, the provision is not binding and does not constitute a continuing
obligation under the Settlement Agreement. See Fort Worth Indep. Sch. Dist., 22 S.W.3d
at 846. Accordingly, we conclude that Whataburger established its entitlement to judgment
as a matter of law on the third ground advanced in its motion for summary judgment. (3) 

D. Barrand's Right to New Restaurants

 In its fourth ground for summary judgment, Whataburger argued that it has complied
with its obligations under the Area Development Agreement and that the Area
Development Agreement does not require Whataburger to grant new store development
to Barrand outside of the defined Development Area. (4) Barrand challenges this ground on
appeal, but its arguments are virtually the same as those discussed above regarding
Whataburger's obligation to renew existing contracts and to execute new contracts for new
restaurants. Barrand contends that the Settlement Agreement obligates Whataburger to
allow new restaurant development outside of the defined Development Area. In construing
the Settlement Agreement in the preceding paragraphs, we have also effectively
addressed and rejected this contention. Accordingly, we hold that Whataburger
established its entitlement to judgment as a matter of law on its fourth ground for summary
judgment. 

E. Conclusion

 We have reviewed all four grounds for summary judgment advanced in
Whataburger's motion for summary judgment. We have concluded that Whataburger
established its entitlement to judgment as a matter of law on each of the grounds. In doing
so, we have confined our analysis to the grounds for summary judgment that relate to
Whataburger's action for declaratory judgment. We have not discussed the counterclaims
asserted against Whataburger by Barrand or the affirmative defenses asserted by
BurgerWorks. We do so in the analysis that follows. 

IV. Analysis of Barrand's Counterclaims and BurgerWorks' Affirmative Defenses

A. Counterclaims Asserted by Barrand

 As noted above, Barrand asserted counterclaims against Whataburger for
declaratory relief, breach of contract, breach of the implied covenant of good faith and fair
dealing, anticipatory repudiation, promissory estoppel, intentional misrepresentation, and
negligent misrepresentation. Whataburger's motion for summary judgment argued that
"summary judgment for Whataburger will necessarily dispose of all claims and
counterclaims . . . ." To that end, Whataburger's motion for summary judgment made
arguments to demonstrate that, if the trial court were to accept its interpretation of the
parties' written contracts, summary judgment would be proper on the counterclaims
asserted by Barrand. 

1. Declaratory Relief 

 Barrand sought the following declaratory relief: (1) "Whataburger is obligated to
grant Barrand new franchise agreements"; and (2) "the Settlement Agreement specifically
provides Barrand the right to renew [its contracts] at the conclusion of the primary and two
five-year option terms in the subject franchise agreement." Having determined that
Whataburger is not obligated to renew contracts for existing restaurants or enter new
contracts for new restaurants, we conclude that the trial court did not err granting summary
judgment to Whataburger on Barrand's request for declaratory relief. 

2. Breach of Contract and the Covenant of Good Faith and Fair Dealing

 Barrand also asserted the following claims regarding the denial of its requests for
new restaurants: (1) "Whataburger breached its obligations pursuant to the Settlement
Agreement by unreasonably withholding its consent to the specific requests by Barrand to
develop Whataburger restaurants outside of its Development Area in 2001"; and (2)
"Whataburger breached its obligations pursuant to the implied covenant of good faith and
fair dealing by unreasonably withholding its consent to specific requests by Barrand to
develop Whataburger restaurants outside of its Development Area in 2001." 

 Having concluded that the Settlement Agreement does not obligate Whataburger
to renew contracts for existing restaurants or enter new contracts for new restaurants, we
conclude that the trial court did not err in granting summary judgment to Whataburger on
Barrand's claim for breach of the Settlement Agreement. 

 This leaves the second claim for breach of the implied covenant of good faith and
fair dealing. Whataburger's motion for summary judgment argued that "there exists no
duty of good faith and fair dealing between franchising parties." See Crim Truck & Tractor
Co. v. Navistar Int'l Transp. Corp., 823 S.W.2d 591, 595 n.5 (Tex. 1992) ("We, however,
have specifically rejected the implication of a general duty of good faith and fair dealing in
all contracts."). The motion further argued that "the facts of this case do not support
recognition of a 'special relationship' between the parties giving rise to a duty of good faith
and fair dealing." On appeal, Barrand contends that the trial court erred in granting
summary judgment on the implied covenant claim: "Whether there exists in this case the
kind of special relationship that creates a duty of good faith and fair dealing is a question
of fact." Brief of Barrand p.30. We disagree that summary judgment was improper. 

 A common-law duty of good faith and fair dealing does not exist in all contractual
relationships. Subaru of Am. v. David McDavid Nissan, Inc., 84 S.W.3d 212, 225 (Tex.
2002). The duty arises only when a contract creates or governs a "special relationship"
between the parties. Id. (citing Arnold v. National County Mut. Fire Ins. Co., 725 S.W.2d
165, 167 (Tex. 1987)). The Texas Supreme Court has declined to extend this common-law
duty to all franchise agreements, holding that a franchisor does not exert control over its
franchisee's business comparable to the control an insurer exerts over its insured's claim. 
Id. (citing Crim Truck & Tractor Co., 823 S.W.2d at 595-96). 

 Regardless of whether a duty of good faith and fair dealing arose under the parties'
agreement, Whataburger is not obligated to execute new contracts with Barrand. We have
already construed the parties' agreement as a matter of law and concluded that
Whataburger has no obligation to execute new contracts, whether for new or existing
restaurants. If a duty of good faith and fair dealing exists, it exists by virtue of the parties'
relationship as franchisor and franchisee. Regardless of whether a franchisor-franchisee
relationship is the type of "special relationship" that can give rise to a duty of good faith and
fair dealing, it is clear that the parties agreed to remain in that relationship for only a limited,
definite, and specified period of time. We would defeat the purpose of the very agreement
arguably giving rise to the duty of good faith and fair dealing if we were to hold that the duty
obligates Whataburger to enter additional contracts, thereby extending into perpetuity its
duty to Barrand and its special relationship giving rise to that duty.

 We hold that summary judgment was proper on this claim for the following reasons: 
(1) the Texas Supreme Court has specifically declined to extend the duty of good faith and
fair dealing to all franchise agreements, see id.; and (2) to the extent such a duty was
nonetheless created by the parties' contractual relationship, we have no legal authority or
logical basis for concluding that the duty obligates Whataburger to enter new contracts and
to thereby extend the duty and the parties' contractual relationship ad infinitum. 

3. Anticipatory Repudiation 

 Barrand also asserted the following counterclaim for anticipatory repudiation: 


58. Whataburger repudiated its ongoing legal obligation to not unreasonably
withhold its consent to Barrand's requests to develop additional restaurants
outside of its Development Area when Whataburger stated that it would allow
Barrand to develop outside of its Development Area only if Barrand first
surrendered its exclusive rights to develop Whataburger restaurants inside
its Development Area.


59. Whataburger repudiated its ongoing legal obligation to not unreasonably
withhold its consent to Barrand's requests to develop additional restaurants
outside of its Development Area when Whataburger stated in letters dated
July 11, 2002, and otherwise, that Whataburger no longer would consent to
any requests by Barrand to develop restaurants outside its Development
Area unless Barrand agreed to execute franchise agreements containing
terms significantly different from those within the Modified Franchise
Agreement.

 

 An anticipatory breach occurs when a party absolutely repudiates the obligation,
without just excuse, and the other party is damaged by the repudiation. Hauglum v.
Durst, 769 S.W.2d 646, 651 (Tex. App.--Corpus Christi 1989, no writ). Again, we have
concluded that Whataburger has no obligation to enter contracts for new or "additional"
restaurants. Accordingly, the trial court did not err in granting summary judgment against
Barrand for anticipatory repudiation of that obligation. 

4. Promissory Estoppel, Intentional Misrepresentation and Negligent

 Misrepresentation 


 Barrand also asserted claims for promissory estoppel, intentional misrepresentation,
and negligent misrepresentation. Each of the claims alleges an oral promise made by
Whataburger that Whataburger allegedly breached. According to Barrand's live pleading,
"Whataburger stated that so long as Barrand met the otherwise objective criteria for store
development, Whataburger would not unreasonably withhold its consent to Barrand's
requests to develop additional Whataburger restaurants . . . ." 

 Notably, the oral promise that is the basis of these claims is indistinguishable from
Barrand's interpretation of the Settlement Agreement and Modified Franchise Agreement. 
In its counterclaims for declaratory judgment, breach of contract, breach of the covenant
of good faith and fair dealing, and anticipatory repudiation, Barrand claimed a contractual
right to develop new restaurants. After reviewing the briefs, pleadings, motions, written
responses, and summary judgment evidence, including the Settlement Agreement and
Modified Franchise Agreement, we concluded that Barrand has no such right. We now
address whether summary judgment was proper on Barrand's claims that it has the same
right to develop new restaurants, not through a written agreement, but through an alleged
oral promise. 

 We address all three claims together, as the parties have in their briefs, motions,
and written responses. The elements of each cause of action are stated in the footnote
below. (5) For purposes of this opinion, it is enough to note, based on the authorities duly
noted below, that reliance is a necessary element for each claim. 

 Whataburger's motion for summary judgment argued that summary judgment was
proper on Barrand's claims for two different reasons: (1) Barrand cannot establish
justifiable reliance, a necessary element for all three claims; and (2) Barrand's claims are
barred by the statute of frauds because they seek enforcement of an oral agreement. We
address only the statute of frauds ground for summary judgment. See Tex. R. App. P.
47.1. 

 Whataburger's live pleading, its first amended original answer to Barrand's claims,
set forth numerous affirmative defenses including the statute of frauds. See Tex. R. Civ.
P. 94. In its motion for summary judgment, Whataburger argued that the oral agreement
to allow new store development alleged by Barrand could not be completed within one year
and was therefore unenforceable under the statute of frauds. See Tex. Bus. & Com. Code
Ann. § 26.01(b)(6) (Vernon Supp. 2006). In its written response, Barrand raised the
following issue against summary judgment on Whataburger's affirmative defense: "[The]
agreement . . . is an enforceable oral contract because it was possible that the obligations
within the agreement could have been completed within one year." We disagree.

 Barrand has maintained throughout this litigation that "[t]he obligations Whataburger
agreed to . . . are permanent and not terminable at will." Brief of Barrand at 14. These
obligations specifically include the obligation "to issue new franchise agreements to
Barrand . . . ." Id. Thus, even according to Barrand, the agreement could not be
performed within one year because it entailed a "permanent" obligation for Whataburger
to allow new store development. 

 Barrand has also maintained that summary judgment was improper on this ground
because Whataburger failed to produce any evidence to establish that the agreement
could not be performed within one year. Again, we disagree that summary judgment was
improper. Barrand's live pleading, its amended supplemental counterclaim, alleged facts
that affirmatively demonstrate that the alleged oral contract could not have been and was
not in fact performed within one year. According to the pleading, the oral contract was first
made in 1994, at the time of the Settlement Agreement. The pleading further alleges that
the oral promise was made again in 1998, prior to the execution of an Asset Purchase
Agreement and Area Development Agreement between Barrand and Whataburger. The
first incident giving rise to a breach of these oral promises, as alleged by Barrand, was "in
early 2001 . . . [when] Whataburger specifically rejected Barrand's request to build two
Whataburger franchises outside of Barrand's Development Area." Thus, even taking the
allegations of Barrand's pleading as true, the agreement to allow development of new
restaurants was not breached until roughly seven years after it was first allegedly made. 
See Farah v. Mafrige & Kormanik, P.C., 927 S.W.2d 663, 673 (Tex. App.-Houston [1st
Dist.]1996, no writ) (explaining that defendant is entitled to summary judgment if "it
conclusively proves the plaintiff cannot recover under its cause of action as pleaded in its
petition.") (emphasis added). The allegations of Barrand's pleading put the agreement
squarely within the statute of frauds. See Tex. Bus. & Com. Code Ann. § 26.01(b)(6). 

 The statute of frauds exists to prevent fraud and perjury in certain kinds of
transactions by requiring agreements to be set out in a writing signed by the parties. 
Haase v. Glazner, 62 S.W.3d 795, 799 (Tex. 2001). That purpose would be frustrated and
the statute easily circumvented if a party could recover the benefit of an unenforceable
contract by asserting claims such as those alleged by Barrand in this case. See id.; Case
Corp. v. Hi-Class Bus. Sys. of Am., Inc., 184 S.W.3d 760, 777 (Tex. App.--Dallas 2005,
pet. denied). In affirming the trial court's order sustaining this ground for summary
judgment, we emphasize the statements made in Barrand's written response, where it
expressly acknowledged that these claims have been asserted as a means to enforce and
recover the benefits of an oral contract. Having concluded that the oral contract is
unenforceable under the statute of frauds, we further conclude that Barrand's claims for
promissory estoppel, negligent misrepresentation, and intentional misrepresentation are
barred as a matter of law because they have been asserted to recover the benefits of an
unenforceable agreement. See Haase, 62 S.W.3d at 799.

B. Affirmative Defenses Asserted by BurgerWorks

 As discussed above, Whataburger's action for declaratory judgment requested that
the trial court declare that Whataburger has (1) no obligation to grant any new franchise
locations, (2) no obligation to renew existing contracts, and (3) no continuing obligations
under the Settlement Agreement. BurgerWorks opposed these requests, maintaining that
the Settlement Agreement and Modified Franchise Agreement imposed an obligation on
Whataburger to grant new franchise locations and renew contracts for existing restaurants. 
BurgerWorks also asserted various affirmatives defenses to the action for declaratory
judgment, including waiver, modification and ratification, and estoppel. 

 Whataburger ultimately prevailed over BurgerWorks when the trial court granted
Whataburger's motion for summary judgment. On appeal, BurgerWorks maintains that the
summary judgment was improper for various reasons, most of which we have addressed
in the above analysis regarding the parties' rights and obligations under the Settlement
Agreement and Modified Franchise Agreement. In that analysis, we concluded that the
Settlement Agreement and Modified Franchise Agreement are unambiguous and that, as
a matter of law, Whataburger has no obligation to grant new franchise locations or renew
existing contracts. We also concluded that Whataburger has no continuing obligations
under the Settlement Agreement. In reaching these conclusions, we did not address the
affirmative defenses asserted by BurgerWorks. Nor did we conclude that the trial court did
not err in granting summary judgment to Whataburger. Instead, we concluded only that
Whataburger established its entitlement to judgment as a matter of law on the four grounds
for summary judgment that related to its action for declaratory judgment. We refrained
from concluding that the trial court properly granted summary judgment to Whataburger
on its action for declaratory judgment because, in order to do so, we had to first address
the affirmative defenses asserted by BurgerWorks. We do so now. 

 BurgerWorks' written response to Whataburger's motion for summary judgment
made the following argument in avoidance of summary judgment: "[T]he Franchisees have
plead several affirmative defenses. Whataburger's motion does not address any of those
affirmative defenses. Because Whataburger has not done that, and for that reason alone,
Whataburger's motion should fail as a matter of law . . . ." On appeal, BurgerWorks argues
that "[s]ummary judgment was improper because Whataburger failed to address . . .
[BurgerWorks'] affirmative defenses." Brief of BurgerWorks p.36. We disagree. 

 In moving for summary judgment on a claim, a plaintiff is under no obligation to
negate the defendant's affirmative defenses. Tesoro Petroleum Corp. v. Nabors Drilling
United States, 106 S.W.3d 118, 124 (Tex. App.--Houston [1st Dist.] 2002, pet. denied);
see also Woodside v. Woodside, 154 S.W.3d 688, 691 (Tex. App.--El Paso 2004, no pet.). 
Thus, Whataburger had no burden to address BurgerWorks' affirmative defenses in
moving for summary judgment on its claim for declaratory judgment. See Clark v. Dedina,
658 S.W.2d 293, 296 (Tex. App.--Houston [1st Dist.] 1983, writ dism'd w.o.j.) ("Mere
pleading, however, of an affirmative defense does not prevent the rendition of summary
judgment for a plaintiff who has established conclusively the non-existence of disputed fact
issues in his claim for relief."). To the contrary, the burden was on BurgerWorks to raise
an issue of fact on each element of its affirmative defenses. See Am. Home Shield Corp.
v. Lahorgue, 201 S.W.3d 181, 185 (Tex. App.--Dallas 2006, pet. filed). ("Because this
exception is an affirmative defense, American Home, as non-movant, had the burden to
raise an issue of fact on each element of the defense."). That is, an affirmative defense
will prevent the granting of summary judgment only if each element of the affirmative
defense is supported by summary judgment evidence. Kirby Explor. Co. v. Mitchell Energy
Corp., 701 S.W.2d 922, 926 (Tex. App.--Houston [1st Dist.] 1985, writ ref'd n.r.e.). (6) 

 BurgerWorks' written response to Whataburger's motion for summary judgment
made two different arguments related to the affirmative defenses. The first, which we have
already addressed, was that Whataburger could not establish its entitlement to judgment
as a matter of law without addressing and negating the affirmative defense. As noted
above, that argument is premised on an incorrect interpretation of Texas summary
judgment procedure. The second argument, which we have not addressed, was that fact
issues exist on each of the affirmative defenses. On appeal, BurgerWorks has blended
the two arguments together, contending that summary judgment was erroneously granted
because "Whataburger failed to address any of these affirmative defenses in its summary
judgment briefing" and because each of its affirmative defenses presents "a question of
fact for the jury." Brief of BurgerWorks p.37-37. In the analysis that follows, we
address whether BurgerWorks succeeded in establishing a genuine issue of material fact
on all the elements of at least one of its affirmative defenses. See Baptist Mem. Hosp.
Sys. v. Sampson, 969 S.W.2d 945, 947 (Tex. 1998).

1. Waiver 

 Waiver is an intentional relinquishment of a known right or intentional conduct
inconsistent with claiming that right. Avary v. Bank of Am., N.A., 72 S.W.3d 779, 788 (Tex.
App.--Dallas 2002, pet. denied). A waivable right may spring from law or from a contract. 
Tenneco Inc. v. Enterprise Prods. Co., 925 S.W.2d 640, 643 (Tex. 1996). Although waiver
is ordinarily a question of fact, when the facts and circumstances are admitted or clearly
established, the question becomes one of law. Id.; see also Motor Vehicle Bd. of the Tex.
DOT v. El Paso Indep. Auto. Dealers Assoc., Inc., 1 S.W.3d 108, 111 (Tex. 1999). 

 Barrand's written response to Whataburger's motion for summary judgment made
the following argument to demonstrate fact issues on the elements of waiver:


Whataburger [claims to have] the right to do two things - refuse to use . . .
the Required Form Agreement in new franchises and terminate the
[Settlement] [A]greement. Whataburger did not, however, exercise either of
those rights. Instead, Whataburger intentionally proceeded to act
inconsistently with these alleged rights and the position it takes in its motion. 


Whataburger routinely approved new locations for seven and a half years
until 2002. Whataburger never informed the Franchisees about its secret
interpretation of the Settlement Agreement, even though it was acting
differently, and even though it had plenty of chances. 


(citations to summary judgment evidence omitted). 

 The first right that was allegedly waived by Whataburger is the right to "refuse to use
. . . the Required Form Agreement in new franchises." In concluding that Whataburger
established its entitlement to judgment as a matter of law on its four grounds for summary
judgment, we did not conclude that Whataburger has the right to "refuse to use . . . the
Required Form Agreement in new franchises." Instead, we concluded that Whataburger
has no obligation to grant new franchise locations or renew existing contracts. Whether
Whataburger has waived its right to "refuse to use . . . the Required Form Agreement in
new franchises" is an immaterial issue given that Whataburger has no obligation to enter
new franchise agreements. In other words, the controlling issue is whether Whataburger
has an obligation to enter new franchise agreements. If it does not, as we have concluded,
there is no need for further proceedings regarding what terms future contracts may include. 
This much is apparent from Whataburger's live petition, which did not claim a right to 
"refuse to use . . . the Required Form Agreement in new franchises." Instead,
Whataburger petitioned the trial court for a judicial declaration that it has (1) no obligation
to grant any new franchise locations, (2) no obligation to renew existing contracts, and (3)
no continuing obligations under the Settlement Agreement. Accordingly, we hold that
waiver of the right to "refuse to use . . . the Required Form Agreement in new franchises"
does not present a fact issue that would preclude summary judgment based on
Whataburger's motion. 

 The second right that was allegedly waived by Whataburger is the right to terminate
the Settlement Agreement at will. In concluding that Whataburger established its
entitlement to judgment as a matter of law on its four grounds for summary judgment, we
did not conclude that Whataburger has the right to terminate the Settlement Agreement
at will. Instead, we concluded that Whataburger has no continuing obligations under the
Settlement Agreement. In doing so, we specifically declined to address the terminable-at-will ground for summary judgment that was presented as an alternative to the no-continuing-obligations ground. Accordingly, we hold that waiver of the right to terminate
the Settlement Agreement at-will does not present a fact issue that would preclude
summary judgment based on Whataburger's motion.

 Having addressed the two waiver arguments presented in BurgerWorks' response
to Whataburger's motion for summary judgment, we hold that BurgerWorks did not defeat
Whataburger's entitlement to summary judgment through its assertion of waiver as an
affirmative defense. 

2. Modification and Ratification 

 BurgerWorks' written response to Whataburger's motion for summary judgment
asserted modification and ratification together in a single section as two affirmative
defenses that precluded summary judgment for Whataburger. In addition to two
paragraphs arguing that, in general, modification and ratification "are fact questions,"
BurgerWorks included the following paragraph of argument in its written response: 


Whataburger's seven years of conduct modified and/or ratified the existing
terms of the Settlement Agreement or created a new agreement or new
terms to the Settlement Agreement to obligate Whataburger to grant new
franchises using the Required Form Agreement and to not act unreasonably. 
But again, this is a fact question for the jury. 

Because modification and ratification are different, we address them separately. 


a. Modification 

 A modification must satisfy the elements of a contract: a meeting of the minds
supported by consideration. Hathaway v. General Mills, Inc., 711 S.W.2d 227, 228-29
(Tex. 1986); Rhoads Drilling Co. v. Allred, 123 Tex. 229, 70 S.W.2d 576, 583 (1934);
Walden v. Affiliated Computer Servs., 97 S.W.3d 303, 314-15 (Tex. App.--Houston [14th
Dist.] 2003, pet. denied). As demonstrated above, BurgerWorks failed to address the
element of consideration in its response to Whataburger's motion for summary judgment. 
In the absence of any discussion of consideration, which is a necessary element for
modification, we cannot conclude that BurgerWorks raised a fact issue on each element
of modification. See In re Alamo Lumber Co., 23 S.W.3d 577, 580 (Tex. App.--San
Antonio 2000, pet. denied) (recognizing consideration as a required element for
modification); Kirby Explor. Co., 701 S.W.2d at 926 (explaining non-movant's burden to
avoid summary judgment by raising fact issue on each element of affirmative defense). 

b. Ratification 

 Ratification occurs if a party recognizes the validity of a contract by acting or
performing under the contract or by otherwise affirmatively acknowledging it. Mo. Pac.
R.R. Co. v. Lely Dev. Corp., 86 S.W.3d 787, 792 (Tex. App.-Austin 2002, pet. dism'd);
Zieben v. Platt, 786 S.W.2d 797, 802 (Tex. App.-Houston [14th Dist.] 1990, no writ);
Wetzel v. Sullivan, King & Sabom, 745 S.W.2d 78, 81 (Tex. App.-Houston [1st Dist.] 1988,
no writ). In other words, if a party by its conduct recognizes a contract as valid, having
knowledge of all relevant facts, it ratifies the contract. Spellman v. American Universal Inv.
Co., 687 S.W.2d 27, 29 (Tex. App.-Corpus Christi 1984, writ ref'd n.r.e.); Motel Enters.,
Inc. v. Nobani, 784 S.W.2d 545, 547 (Tex. App.-Houston [1st Dist.] 1990, no writ). Any
act inconsistent with an intent to avoid a contract has the effect of ratifying the contract. 
Barker v. Roelke, 105 S.W.3d 75, 84-85 (Tex. App.-Eastland 2003, pet. denied); Old
Republic Insurance Company, Inc. v. Fuller, 919 S.W.2d 726, 728 (Tex. App.-Texarkana
1996, writ denied). Whether a party has ratified a contract may be determined as a matter
of law if the evidence is not controverted or is incontrovertible. Roelke, 105 S.W.3d at
84-85.

 There is no dispute in this case regarding the validity of the Settlement Agreement
and the Modified Franchise Agreement, the only contracts at issue between Whataburger
and BurgerWorks. Although Whataburger has maintained that the Settlement Agreement
is terminable at-will, we do not view that argument as casting a cloud on the validity of the
contract. To the contrary, Whataburger's position recognizes the existence of a valid
contract and then suggests that the contract may be terminated at-will. See Clear Lake
City Water Authority v. Clear Lake Utilities Co., 549 S.W.2d 385, 390 (Tex. 1977)
("[C]ontracts which contemplate continuing performance (or successive performances) and
which are indefinite in duration can be terminated at the will of either party."). This, in our
view, is different from a claim that there is no contract or that the contract relied upon is
invalid. In fact, Whataburger's entire suit for declaratory judgment is, in essence, a request
for the trial court to review the parties' written agreements and to declare their respective
rights and obligations under those agreements, not to declare them invalid. Accordingly,
there is no reason for us to conclude, as urged by BurgerWorks, that the affirmative
defense of ratification presents fact issues precluding summary judgment for Whataburger. 

3. Estoppel 

 Estoppel is the third and final affirmative defense asserted in BurgerWorks'
response. Estoppel requires five elements: (1) a false representation or concealment of
material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the
intention that it should be acted on; (4) to a party without knowledge, or the means of
knowledge of those facts; (5) who detrimentally relied upon the misrepresentation. 
Johnson & Higgins v. Kenneco Energy, 962 S.W.2d 507, 515-16 (Tex. 1998); Schroeder
v. Tex. Iron Works, Inc., 813 S.W.2d 483, 489 (Tex. 1991); Gulbenkian v. Penn, 151 Tex.
412, 418, 252 S.W.2d 929, 932 (1952). 

 BurgerWorks' response offered the following paragraph to establish fact issues on
each element of estoppel:


Whataburger's post-formation conduct estops it from now retroactively
denying its obligation to grant new franchises using the Required Form
Agreement and to act reasonably. Whataburger, for over seven years,
complied with the Settlement Agreement by routinely granting new franchises
using the Required Form Agreement. The Franchisees relied on
Whataburger's conduct over those seven years, which was a continuing
representation that it would not act unreasonably and would grant new
franchises using the Required Form Agreement. Allowing Whataburger to
escape its obligation would severely damage the Franchisees. 


(citations to summary judgment evidence omitted). 

 According to BurgerWorks, Whataburger made two false representations: (1) a
representation that it is obligated to grant new franchises using the Required Form
Agreement and (2) a representation that it is obligated to act reasonably. The obligation
to grant new franchises has been discussed throughout this opinion. In addressing the
affirmative defense of waiver, we clarified the distinction between an obligation to grant
new franchises and an obligation to grant new franchises using the Required Form
Agreement. We identified the former as controlling and the latter as immaterial. We did
so based on our conclusion that Whataburger has no continuing obligation to grant new
franchises. In addressing estoppel, we are guided by the same conclusion. Even if
Whataburger were estopped from denying its alleged obligation to use the Required Form
Agreement for all new franchises, the outcome of this case would not be any different
because Whataburger has no underlying obligation to grant new franchises. Thus, any fact
issues regarding estoppel on terms for new franchises are immaterial and do not defeat
Whataburger's entitlement to judgment as a matter of law. 

 The obligation to act reasonably has also been discussed throughout this opinion. 
Although the scope and operation of the reasonableness clause has been hotly contested,
Whataburger has not disclaimed its obligation to act reasonably under the Settlement
Agreement and the Modified Franchise Agreement. It has maintained throughout this
litigation that the reasonableness clause does not obligate it to renew existing contracts or
grant new franchise locations. Even in making these arguments, however, Whataburger
has not contended that the reasonableness clause is invalid or otherwise non-binding. In
our analysis of the parties' rights and obligations under the written agreements, we
concluded that the reasonableness clause does not extend to Whataburger's decision to
renew existing contracts or to grant new franchise locations. The estoppel defense
asserted by BurgerWorks is based almost entirely on an alleged obligation to not
unreasonably deny requests for new franchise locations. Because we have concluded that
no such obligation exists, we now conclude that the estoppel defenses does not present
a fact issue that would preclude summary judgment for Whataburger.

V. Conclusion

 In sum, we conclude that the trial court did not err in granting summary judgment
to Whataburger on all claims. We have not addressed whether the trial court erred in
excluding the expert testimony offered by BurgerWorks and Barrand. That testimony
related to the issue of damages. Because we have concluded that Whataburger
established its entitlement to judgment as a matter of law on the counterclaims asserted
against it for money damages, any fact issue on damages is immaterial. See Tex. R. Civ.
P. 166a(c) (explaining that summary judgment is proper if the movant demonstrates "that,
except as to the amount of damages, there is no genuine issue of material fact and the
moving party is entitled to judgment as a matter of law"). Thus, any error by the trial court
in excluding the expert testimony would necessarily be harmless. See Tex. R. App. P.
44.1(a). Accordingly, all issues raised by BurgerWorks and Barrand are overruled. The
judgment of the trial court is affirmed. 



 


 DORI CONTRERAS GARZA,

 Justice


Opinion delivered and filed this 

the 29th day of December, 2006.

1. The Modified Franchise Agreement contains a similar provision:


XXIV. MISCELLANEOUS


 A. Franchisor agrees that it will not unreasonably withhold its consent or approval
to any action requiring its consent or act unreasonably with respect to any provision of this
Agreement.
2. Barrand contends that this interpretation of the clause is consistent with the doctrine of last
antecedent. Reply Brief of Barrand p.15. That canon of construction states that a qualifying phrase in a
statute or the Constitution must be confined to the words and phrases immediately preceding it to which it
may, without impairing the meaning of the sentence, be applied. See Spradlin v. Jim Walter Homes, Inc., 34
S.W.3d 578, 580 (Tex. 2000). Although the doctrine of last antecedent has been generally applied as a canon
of statutory and constitutional interpretation, see City of Corsicana v. Willman, 147 Tex. 377, 379 (Tex. 1949),
we see no reason why it should not be equally applicable to issues of contract construction. See Stewman
Ranch, Inc. v. Double M. Ranch, Ltd., 192 S.W.3d 808, 812 (Tex. App.--Eastland 2006, pet. denied) ("One
of the basic rules of grammatical construction is the doctrine of last antecedent."). 
3. Having concluded that Whataburger has no continuing obligations under the Settlement Agreement,
we need not address its alternative argument that the Settlement Agreement is terminable-at-will. See Tex.
R. App. P. 47.1. 
4. The Area Development Agreement provided Barrand with the exclusive right to develop Whataburger
restaurants within defined areas of southern Alabama, the Florida panhandle, and an area in Texas south of
Dallas. 
5. Promissory estoppel generally is a defensive doctrine in that it estops a promisor from denying the
enforceability of the promise. Trammel Crow Co. No. 60 v. Harkinson, 944 S.W.2d 631, 636 (Tex. 1997);
Wheeler v. White, 398 S.W.2d 93, 96 (Tex. 1965). The requisites of promissory estoppel are (1) a promise,
(2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his
detriment. English v. Fischer, 660 S.W.2d 521, 524 (Tex. 1983); see also Henry Schein v. Stromboe, 102
S.W.3d 675, 686 n.25 (Tex. 2002). The reliance must be reasonable and justified. Frost Crushed Stone Co.
v. Odell Geer Constr. Co., 110 S.W.3d 41, 45 (Tex. App.-Waco 2002, no pet.); Gilmartin v. Corpus Christi
Broad. Co., 985 S.W.2d 553, 558 (Tex. App.-San Antonio 1998, no writ) (promissory estoppel). 


Intentional misrepresentation is essentially fraud. Rencare, Ltd. v. United Med. Res., Inc., 180 S.W.3d 160,
166 (Tex. App.-San Antonio 2005, no pet.); Smith v. Tilton, 3 S.W.3d 77, 88 (Tex. App.-Dallas 1999, no pet.);
see also T.O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 222 (Tex. 1992); Farah v. Mafrige &
Kormanik, P.C., 927 S.W.2d 663, 673 (Tex. App.-Houston [1st Dist.]1996, no writ) (agreeing that "fraudulent
misrepresentation . . . is another name for common law fraud."). The elements of actionable fraud in Texas
were stated in Wilson v. Jones, 45 S.W.2d 572, 574 (Tex. Comm. App. 1932, holding app'd): (1) that a
material representation was made; (2) that it was false; (3) that, when the speaker made it, he knew it was
false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made it
with the intention that it should be acted upon by the party; (5) that the party acted in justifiable reliance upon
it; and (6) that he thereby suffered injury. Trenholm v. Ratcliff, 646 S.W.2d 927, 930 (Tex. 1983); see also
Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001). 


Negligent misrepresentation requires the following elements: (1) the representation is made by a defendant
in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant
supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise
reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers
pecuniary loss by justifiably relying on the representation. Fed. Land Bank Ass'n v. Sloane, 825 S.W.2d 439,
442 (Tex. 1991); see also Henry Schein 102 S.W.3d at 686 n.24.


Each of Barrand's counterclaims requires a showing of justifiable reliance. See Sloane, 825 S.W.2d at 442
(negligent misrepresentation); Trenholm, 646 S.W.2d at 930 (fraud or intentional misrepresentation); Crushed
Stone, 110 S.W.3d at 45 (promissory estoppel).
6. This is a well-established rule of Texas summary judgment procedure. Seale v. Nichols, 505 S.W.2d
251, 254 (Tex. 1974). It can be easily traced through the jurisprudence of the Texas Supreme Court at least
as far back as 1959:


Where the plaintiff moves for summary judgment in an action in which the defendant has
pleaded an affirmative defense, he is entitled to have his summary judgment if he
demonstrates by evidence that there is no material factual issue upon the elements of his
claim, unless his opponent comes forward with a showing that there is such a disputed fact
issue upon the affirmative defense.


Gulf, C. & S. F. R. Co. v. McBride, 159 Tex. 442, 454, 322 S.W.2d 492, 500 (Tex. 1959) (citing LeMond &
Kreager, The Scope of Pleading as Proof in Summary Judgment Procedure, 30 Texas Law Rev., pp.
613-622); see also Baptist Mem. Hosp. Sys. v. Sampson, 969 S.W.2d 945, 947 (Tex. 1998); Brownlee v.
Brownlee, 665 S.W.2d 111, 112 (Tex. 1984); Houston v. Clear Creek Basin Authority, 589 S.W.2d 671, 678
(Tex. 1979) ("[T]he non-movant must expressly present to the trial court any reasons seeking to avoid
movant's entitlement, such as those set out in rules 93 and 94, and he must present summary judgment proof
when necessary to establish a fact issue.").