**M.A. SHAW, Individually, and d/b/a Contractors Co-op. Co. and d/b/a 3-C Roofing Company, Appellant,**

v.

**KENNEDY, LTD., Jerbo/Kennedy Corp., and Jerry M. Reinsdorf, Appellees.**

No. 07-93-0336-CV.

Court of Appeals of Texas,
Amarillo.

May 23, 1994.

John H. Tull, Jr., Irving, for appellant.

Randall K. Lindley, David R. Gibson, Caolo & Bell, LLP, Dallas, for appellees.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

REYNOLDS, Chief Justice.

Aggrieved by the take-nothing summary judgment rendered in his action to recover contract damages from Kennedy, Ltd., Jerbo/Kennedy Corp., and Jerry M. Reinsdorf, and to foreclose mechanic's and materialman's liens, M.A. Shaw, individually, and d/b/a Contractors Co-op. Co. and d/b/a 3–C Roofing Company, contends, by four points of error, that issues of material fact exist to vitiate the summary judgment. Disagreeing, we will affirm.

In the spring of 1989, storms damaged apartment complexes in Dallas, Texas, owned by Kennedy, Ltd., an Illinois limited partnership (Kennedy). Acting as "Director of Operations" for Kennedy, David R. Weinreb executed written contracts for repair of the complexes with Shaw, doing business as 3–C Roofing Company and as Contractors Co-op. Co., hereinafter referred to as Shaw. By the contract, Shaw would repair the complexes, and Kennedy would pay for the labor and materials.

Shaw filed mechanic's and materialman's liens on the complexes repaired. When the balances owing on the contracts remained unpaid by Kennedy, Shaw filed a verified action, alleging breach of contract and quantum meruit, and seeking the monies alleged to be owed, foreclosure of the liens, and recovery of attorney's fees incurred.

By its amended answer, Kennedy denied Shaw's allegations and asserted affirmative defenses and counterclaims against Shaw. Subsequently, Kennedy interpleaded, and counterclaimed against, Richard C. Christopher,[1] citing his partnership with Shaw in 3–C Roofing, and alleging, as the basis for the necessity of joining him as a third-party defendant, that the claims asserted by him were the same as those asserted by Shaw.

Filed in the cause, on 13 February 1992, are two handwritten documents prepared after a court-ordered mediation, which read as follows:

# 90–09334–J

| | |
|---|---|
| Shaw | In the 191st |
| v. | Judicial |
| Kennedy | District Court |

Memorandum of Settlement

1.  [Kennedy] shall pay [Shaw] $41,825, payable as follows:

> $5,075 – on or before 2–1–92
> $36,750 – payable $1750 per month 1st payment due 3–1–92, and payments on the 1st day of each month thereafter until paid in full.

2.  [Kennedy] will receive 5% discount for pre-payment of the balance due.
3.  Balance shall be secured by an Agreed Judgment in the amount of $50,000; which judgment will not be abstracted provided that the monthly payments are made as agreed. [Shaw] will take no post-judgment actions as long as the payment (sic) are kept current.
4.  All parties will exchange mutual releases.
5.  Release of Judgment will be signed and delivered to a mutually agreeable escrow agent, with instructions to deliver to [Kennedy] when the balance due is paid in fully (sic).
    Signed on Jan 17, 1992

---

1. Richard C. Christopher is not a party to this appeal.

/s/ M.A. Shaw
M.A. Shaw

/s/ D.R. Weinreb
Kennedy, Ltd.
By David Weinreb

/s/ Wesley Hepworth
Wesley Hepworth
attorney for Shaw

/s/ Randall K. Lindley
Randall Lindley
attorney for Kennedy

The use of an arrow indicates, without objection by any party, that the following three numbered paragraphs are incorporated above the signatures into the memorandum:

6. This settlement is subject to obtaining a release from Richard Christopher's bankruptcy Trustee, and Richard Christopher releasing Shaw and Kennedy, Ltd.
7. Settlement to be concluded on or before Feb. 1, 1992.
8. Counsel for [Kennedy] will prepare initial draft of settlement documents.

90–09334–J

Shaw
vs.
Kennedy Ltd.
vs.
Christopher

In the 191st
Judicial
District
Court

### Memorandum of Settlement

1. Suit against Christopher will be dismissed with prejudice with cost taxed against the party incurring same.
2. Shaw, Kennedy, Ltd & Christopher exchange mutual releases
3. [T]his settlement is subject to obtaining a release from Christopher's Bankruptcy Trustee.
   Signed on Jan 17, 1992.

/s/ Richard Christopher
Richard Christopher
        pro se

/s/ David R. Weinreb
Kennedy, Ltd.
By David Weinreb

/s/ Randall K. Lindley, Esq.
Randall Lindley, Atty
for Kennedy, Ltd.

In accordance with the terms of the memorandums of settlement, Kennedy's attorney submitted further documentation of the agreements reached, but Shaw and Christopher refused to execute the documents.

On 17 February 1992, Kennedy filed a motion to enforce the memorandums of settlement. In response to Kennedy's motion, Shaw alleged his refusal to sign the documents presented by Kennedy's attorney was based upon Kennedy's failure to obtain releases from Christopher and his bankruptcy trustee as provided in the sixth paragraph of the memorandum of settlement between Shaw and Kennedy. Further, that he (Shaw) was coerced into signing the memorandum of settlement, the documentation contained extraneous language concerning indemnification, and no verification of Weinreb's authority to sign the memorandums and settlement agreement documentation for Kennedy had been received.

Replying, Kennedy asserted that, after the mediation, it was determined Christopher's bankruptcy was closed and all property had been abandoned back to him by the trustee, and further, that Christopher's separate execution of a memorandum of settlement operated as a release to satisfy the sixth paragraph of the memorandum of settlement between Kennedy and Shaw. Kennedy offered the affidavits of Lawrence Maxwell, the me-

diator, to refute Shaw's allegation of coercion, and that of Martin Heyden, one of the partners of Kennedy, to confirm Weinreb's authority to act for Kennedy. Furthermore, Kennedy added, following Shaw's objection, the indemnification portion was deleted from the documentation.

By supplemental petition, Shaw included, and claimed against, Jerbo/Kennedy Corp., an Illinois corporation, and Jerry M. Reinsdorf, an individual, as general partners of Kennedy. In so doing, he alleged the identical claims of breach of contract and quantum meruit contained in his live petition against Kennedy, but he did not allege any separate causes of action against Jerbo and Reinsdorf individually.

Because Shaw alleged the factual conditions of "duress and failure of a condition precedent (i.e. a release from Christopher's Trustee in Bankruptcy)," the trial court overruled Kennedy's motion to enforce the memorandums of settlement. The trial court implied, by its 8 September 1992 letter overruling the motion to enforce, that the proper procedure should have been a motion for summary judgment.

Kennedy filed a supplemental counterclaim alleging Shaw and Christopher breached the terms of the memorandums of settlement in refusing to execute documentation of the agreements made, and asked for specific performance and recovery of attorney's fees. Kennedy then filed for summary judgment against Shaw and Christopher, alleging the memorandums of settlement were enforceable according to the law of contracts. As summary judgment evidence, Kennedy incorporated into its motion the following documents:

1. Affidavit of David R. Weinreb, to establish that the memorandums of settlement were executed, but Shaw and Christopher refused to sign further documentation as agreed.

2. Affidavit of Jerry M. Reinsdorf, to verify Weinreb's authority to enter settlement agreements and execute supporting documentation on behalf of Kennedy.

3. Affidavit of Lawrence R. Maxwell, Jr., to establish Shaw was not coerced into signing the memorandum of settlement.

4. Affidavit of Randall K. Lindley to establish reasonable attorney's fees incurred to enforce the memorandums of settlement.

5. Certified copies of the application for closing and the order accepting the trustee's report and closing on Christopher's bankruptcy, to establish all of Christopher's claims were abandoned back to him by the bankruptcy trustee.

The affidavits were attached to the motion, but the certified copies, albeit incorporated by reference into the motion, were not filed with the court until the following day.

In responding to Kennedy's motion for summary judgment, Shaw did not question that the certified copies were a part of the record before the court; he only submitted that they did not appear to be properly certified and, thus, the condition of obtaining a release from Christopher's bankruptcy trustee was not met. Furthermore, Shaw contended the trial court could not enter a consent judgment when one of the parties had withdrawn his consent prior to entry of the judgment. He further contended, without supporting authority, that the affidavit stating Weinreb was an agent of Kennedy was "simply insufficient to obligate Kennedy, Ltd. under any legally-binding settlement agreement," and that the company for which Weinreb was executive vice-president, Thornton Partners Management Company, had lost its ability to do business in the state of Texas at the time of mediation.

The court rendered partial summary judgment by granting Kennedy's motion. The order was rendered in accordance with the terms and provisions of the memorandums of settlement, and included an award of $5,000 to Kennedy as attorney's fees related to enforcing the agreements made. The order disposed of all claims and issues pertaining to Kennedy, Christopher, Shaw, 3–C Roofing, and Contractors.

Reinsdorf and Jerbo likewise moved for summary judgment. By their live motion, they alleged that the partial summary judgment disposing of all their partner's (Kennedy's) interest effectually disposed of Shaw's claims, leaving no cognizable claims against

them individually. This was so, they submitted, because the causes of action against them arose from the same transaction as the claims against Kennedy simply by virtue of their general partnership with Kennedy rather than from any personal involvement in the transactions.

The trial court granted Jerbo and Reinsdorf's motion, ordering that Shaw take nothing against them. The court also determined that the memorandums of settlement were enforceable as provided in the partial summary judgment, which was incorporated into the judgment, thereby disposing of all parties and issues and rendering final judgment. *See Teer v. Duddlesten,* 664 S.W.2d 702, 703 (Tex.1984).

In appealing from the summary judgment, Shaw contends that it was improper because questions of fact exist whether (1 & 2) conditions precedent were met, (3) Weinreb had authority to act for Kennedy, and (4) the summary judgment in favor of Jerbo and Reinsdorf was dependent upon the disposition made of Shaw's claims against Kennedy. We will address the contentions of error in logical consecution.

■ A movant is entitled to summary judgment if he establishes the absence of genuine issues of material fact and the right to judgment under those undisputed material facts, as a matter of law, on grounds expressly stated in the motion. *Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex.1983). The movant, against whom all doubts are resolved, has the burden of establishing both elements. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979).

■ The foundation of the summary judgment is attacked by Shaw's third-point-of-error contention that a question of fact exists whether Weinreb had authority to execute the memorandums of settlement and legally bind Kennedy. We do not agree.

Shaw had no quarrel with Weinreb's execution of the contracts obligating Kennedy to pay for repairs to the damaged complexes. Indeed, Shaw's original petition recites that

service of process for Kennedy "may be had by serving Mr. David L. Weinreb, Director of Operations, Kennedy, Ltd.,"[2] and states that demands for payment pursuant to the repair contracts were made on Weinreb. Moreover, Shaw not only sought to hold Kennedy liable through the agency of Weinreb, but he relied upon the authority of Weinreb during the mediation to effect a settlement of the controversy, never once contesting Weinreb's authority to act on behalf of Kennedy.

■ Contrasting Shaw's unsupported statement that the "only entity authorized to execute documents on behalf of a limited partnership is the General Partner," we observe that the law of agency applies to limited partnerships such as Kennedy. Tex.Rev. Civ.Stat.Ann. art. 6132b § 4(3) (Vernon 1970). It is well settled that a principal is liable for the acts of its agent; what a principal does through an agent, he does himself. *Nahm v. J.R. Fleming & Co.,* 116 S.W.2d 1174, 1176 (Tex.Civ.App.—Eastland 1938, no writ).

Kennedy has not disputed Weinreb's authority to act on its behalf and, by the Heyden affidavit, Kennedy asserts Weinreb's actual authority to act as its agent. By holding himself out as Kennedy's agent, Weinreb may act for Kennedy so long as it is lawful, usual, and reasonably necessary for Kennedy to request him to act. *Megert v. Collard,* 266 S.W.2d 543, 545 (Tex.Civ.App.—Amarillo 1953, writ ref'd n.r.e.).

Additionally, Shaw did not controvert Heyden's affidavit. Shaw's only response to Heyden's affidavit was his unsupported statement that Weinreb was not authorized to act for Kennedy because he was not a general partner of Kennedy. Such is insufficient to controvert Heyden's affidavit. *See City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d at 677.

■ Shaw's contention that Thornton Partners Management Company, for which Weinreb served as executive vice-president, had lost its ability to do business in the state of Texas, is irrelevant. Thornton was not a

2. Although Shaw's petition contains a typographical error denominating Weinreb as "David L." instead of "David R.," there is no contention that

the petition refers to someone other than David R. Weinreb. This is further supported by the addition of the title, "Director of Operations."

partner of Kennedy, nor was Weinreb holding himself out to act on behalf of Thornton, but only on behalf of Kennedy. Even so, the loss of authority to do business in Texas does not affect the validity of agreements executed by that entity. *Greig v. First National Bank of San Angelo,* 511 S.W.2d 86, 89 (Tex. Civ.App.—Beaumont 1974, writ ref'd n.r.e.).

The summary judgment proof was sufficient to establish as a matter of law that Weinreb had authority to act for Kennedy. Shaw has not raised a genuine question of fact in this regard, and his third point is overruled.

By his initial two points of error, Shaw contends the summary judgment was improper because questions of fact exist whether conditions precedent in the memorandums of settlement were met. Kennedy responds that there were no conditions precedent, but if there were, they were either met or excused.

■ A condition precedent is an event which must happen or be performed before a right can accrue to enforce an obligation. *Centex Corp. v. Dalton,* 840 S.W.2d 952, 956 (Tex.1992). It is an event, the occurrence of which renders the obligation enforceable. *Pearcy v. Environmental Conservancy of Austin and Cent. Texas, Inc.,* 814 S.W.2d 243, 245 (Tex.App.—Austin 1991, writ denied).

■ A provision in a contract creates a condition precedent in the absence of anything in the contract to show that such was not the intent of the parties. Use of terms like "provided that," "if," or "subject to," usually indicate that a promise is not to be performed except upon a condition or happening of a stated event. *Criswell v. European Crossroads S. Ctr.,* 792 S.W.2d 945, 948 (Tex.1990); *Henderson v. Texas Commerce Bank–Midland, N.A.,* 837 S.W.2d 778, 781 (Tex.App.—El Paso 1992, writ denied).

■ Because the sixth paragraph of the memorandum of settlement between Shaw and Kennedy made the agreement "subject to" obtaining a release from Christopher's bankruptcy trustee, and Christopher releasing Shaw and Kennedy, obtaining the releases were conditions precedent. The condi-

tions precedent must either have been met or excused before the obligation can be enforced. *Hohenberg Bros. Co. v. George E. Gibbons & Co.,* 537 S.W.2d 1, 3 (Tex.1976).

■ The first condition required to be met or excused was that of obtaining a release from Christopher's bankruptcy trustee. This condition was excused.

The copies of the application for, and order accepting, the closing of Christopher's bankruptcy proceedings appearing in the record were certified by the bankruptcy court of the Northern District of Texas. The copies in the record were properly authenticated pursuant to rule 902, Texas Rules of Civil Evidence, and were competent summary judgment evidence incorporated into Kennedy's motion for summary judgment. TEX.R.CIV.P. 166a. Because all of Christopher's claims and property were abandoned back to him by the closing order of the bankruptcy court, the condition of obtaining a release from the bankruptcy trustee was excused.

Shaw further contends that although the application for closing was filed on 21 January 1992, before the time noted for completion of the settlement in the memorandum, the order accepting the bankruptcy was not closed until 21 April 1992, a time after the time stated in the memorandum. Thus, Shaw contends that the condition, if met, was met untimely.

■ Any intention to make time of the essence must be clearly manifested in the contract, because time is not ordinarily of the essence in a contract, and failure to perform at the exact time called for is not a breach of contract. *Superior Signs, Inc. v. American Sign Services, Inc.,* 507 S.W.2d 912, 915 (Tex. Civ.App.—Dallas, 1974, no writ). A stated date for performance does not, of itself, mean time is of the essence. *Argos Resources, Inc. v. May Petroleum,* 693 S.W.2d 663, 664–65 (Tex.App.—Dallas 1985, writ ref'd n.r.e.).

■ The memorandum of settlement between Shaw and Kennedy provides that the settlement was to be concluded "on or before Feb 1, 1992," but, no mention was made that time was of the essence. Because time was not expressly made to be of essence in the

memorandum of settlement, any untimeliness by Kennedy did not excuse Shaw's obligations under the agreements. *HECI Exploration Co. v. Clajon Gas Co.*, 843 S.W.2d 622, 634–35 (Tex.App.—Austin 1992, writ denied).

Kennedy maintains that Christopher's execution of the settlement agreement met the second condition, that of obtaining a release from him. Although we are not convinced that the condition was met, the evidence established that, as a matter of law, it was excused.

■ The law of contracts is applicable to settlement agreements. *Stewart v. Mathes*, 528 S.W.2d 116, 118 (Tex.Civ.App.—Beaumont 1975, no writ). Once the parties accept the terms of the settlement, the agreement is binding and can be enforced by the courts. *Id.* at 119; *Mapp v. Snitker*, 449 S.W.2d 857 (Tex.Civ.App.—Amarillo 1969, no writ). However, enforcement of the agreement must be supported by pleadings and proof. *Browning v. Holloway*, 620 S.W.2d 611, 615 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.).

While we recognize that findings of fact ordinarily have no place in a summary judgment proceeding, *State v. Easley*, 404 S.W.2d 296, 297 (Tex.1966), we notice that Shaw made no objection to the findings and does not challenge them on appeal. While unchallenged factual findings after a trial are conclusive on the parties and the court, *Adams v. American Quarter Horse Assn.*, 583 S.W.2d 828, 833 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.), the findings in this summary judgment proceeding serve to reveal the basis upon which the trial court rendered judgment. The court found the memorandums of settlement between Kennedy, Shaw and Christopher were "valid and enforceable written contracts," and both Shaw and Christopher breached their contracts of settlement by failing to execute appropriate settlement documents.

■ A breach of reciprocal promises in a contract by one party excuses performance by the other parties. *D.E.W., Inc. v. Depco Forms, Inc.*, 827 S.W.2d 379, 382 (Tex. App.—San Antonio 1992, no writ). If an agreement of settlement is breached by one of the parties, the other party may treat the agreement as repudiated and claim rights either under the agreement or the underlying cause of action. *Alexander v. Handley*, 136 Tex. 110, 146 S.W.2d 740 (1941); *and see Browning v. Holloway*, 620 S.W.2d at 616–17.

■ Because Christopher refused to execute the settlement documentation in accordance with the agreement made, Kennedy was entitled to treat the agreement as repudiated and claim rights under the agreement executed. Christopher's breach excused Kennedy's performance of obtaining a release from him. Shaw's first and second points of error are overruled.

By his final point of error, Shaw contends the final summary judgment was improper, because there were questions of fact whether the partial summary judgment disposed of all claims asserted against Jerbo and Reinsdorf. This is so, he submits, because a judgment against a partnership does not presume a judgment against the individual partners. *Cissne v. Robertson*, 782 S.W.2d 912, 927 (Tex.App.—Dallas 1989, writ denied); *Amarillo–Panhandle Development Corp. v. Ellis*, 10 S.W.2d 733, 735 (Tex.Civ.App.—Amarillo 1928, no writ).

■ As general partners of Kennedy, Jerbo's and Reinsdorf's liability is governed by the Texas Uniform Partnership Act (the Act). Tex.Rev.Civ.Stat.Ann. art. 6132a–1 § 4.03 (Vernon Supp.1994). Under the Act, Jerbo and Reinsdorf are jointly and severally liable with each other and with Kennedy for obligations of the limited partnership. *Shawell v. Pend Oreille Oil & Gas Co.*, 823 S.W.2d 336, 337 (Tex.App.—Texarkana 1991, writ denied). However, the allegations against Jerbo and Reinsdorf, as general partners of Kennedy, were derivative of the liability pursued against Kennedy, and no allegations of individual liability by Jerbo and Reinsdorf were made. Thus, the take-nothing summary judgment rendered in favor of the partnership extinguished Shaw's claims against Jerbo and Reinsdorf as general partners. *Hammonds v. Holmes*, 559 S.W.2d

345, 347 (Tex.1977). Shaw's fourth point of error is overruled.

Accordingly, the judgment is affirmed.