

# NUMBER 13-09-00548-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**CONSUMER PORTFOLIO SERVICES, INC.,**          **Appellant,**

**v.**

**JUDITH OBREGON,**          **Appellee.**

### On appeal from the County Court at Law No. 2 of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Justices Yañez, Rodriguez, and Garza
### Memorandum Opinion by Justice Rodriguez

This appeal arises from a dispute over compliance with the parties' Rule 11 settlement agreement. *See* TEX. R. CIV. P. 11. At issue is the trial court's denial of appellant Consumer Portfolio Services, Inc.'s (CPS) motion for summary judgment and granting of appellee Judith Obregon's motion for summary judgment. By three issues,

CPS argues that the trial court erred in: (1) granting Obregon's motion for summary judgment based on CPS's alleged breach of the settlement agreement by failing to make payment of $3,000.00 within twenty days of December 5, 2008; (2) denying CPS's motion for summary judgment based on Obregon's alleged breach of the settlement agreement by repudiation and refusal to execute a release of liability upon tender; and (3) awarding attorney's fees to Obregon. We affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

On November 28, 2007, Obregon filed her original petition against Rio Grande Valley Motors, Inc. (RGVM) and CPS, alleging claims arising out of the purchase of a motor vehicle from RGVM. In her subsequent amended complaints on September 8, 2008 and November 20, 2008, Obregon claimed RGVM failed to inform her that the vehicle she purchased had been previously damaged and that CPS, a consumer finance company that was assigned the retail sales installment contract executed between RGVM and Obregon, engaged in unfair debt collection practices by misrepresentation of the status of a consumer debt.

In early December 2008, CPS gave RGVM written authority to negotiate a settlement agreement on its behalf with Obregon. On December 4, 2008 and December 5, 2008, a series of fax transmissions were exchanged between RGVM and Obregon in an attempt to reach a settlement agreement. Fax #1 was sent on December 4, 2008, from RGVM to Obregon, offering the following:

> On behalf of my client and CPS, Inc. we hereby extend a joint settlement offer of $12,000.00. CPS will wipe out the deficiency and delete the trade line from the credit report. A tri-party release will be executed by all.

2

On December 5, 2008, Obregon counteroffered with Fax #2:

> In response to the Defendants' joint offer, we counter at $12,500.00 plus deletion of trade line/clearance/release of any debt balance, payable within 20 days. I believe $12,500.00 represents the midpoint of Plaintiff's demands and Defendants' last offer.

RGVM responded on December 5, 2008, to the counteroffer with Fax #3:

> This Rule 11 Agreement will confirm we have reached a settlement between Defendants and your client Judith Obregon in the amount of $12,500.00 plus deletion of trade line/clearance/release of any debt balance. This settlement shall be payable within 20 days. If this confirms our agreement, please sign below and return via fax.

Obregon signed a copy of RGVM's response and returned it via Fax #4. RGVM and CPS agreed that RGVM would be responsible for payment of $9,500.00 and CPS would be responsible for $3,000.00.[1]

On December 11, 2008, RGVM sent a check to Obregon for the sum of $9,500.00 with a letter indicating that CPS was "working on the settlement documents." On December 18, 2008, CPS sent the proposed settlement documents, entitled "Confidential Compromise Settlement, Indemnity Agreement and Complete Release of All Claims," (CSA) to Obregon via Federal Express. CPS contends, and Obregon does not dispute, that the proposed settlement documents were delayed due to CPS mistakenly addressing the package to Obregon's counsel's prior address and that they arrived on December 24, 2008.

At 4:56 p.m. on December 24, 2008, CPS received a letter from Obregon by fax that contained the following:

---

[1]CPS's counsel attested by affidavit that CPS agreed to pay $3,000.00 of the settlement amount.

> Thank you for your settlement agreement received by my office today. Unfortunately, your client did not pay per the agreed time deadline, and we therefore consider your client in breach in the amount of $3,000.00. We will release such claim if the sum of $3,500.00 is received on or before December 31, 2008. . . .
>
> I am having my client execute the CSA except for two changes (attached). The first relates to the deadline established by written agreement; 20 days from December 5, 2008, which has not been altered by any agreement. Second, the Release excludes release for any breach of the agreement itself.

Accompanying the faxed letter were two revised pages of the CSA. On one page, the settlement payment terms were scratched through and changed from an agreement to pay "within 20 days of the date of this agreement" to "within 20 days of Dec. 5, 2008." On the revised second page, under the release portion of the CSA, the amendment "Plaintiff Obregon does not release breach of this agreement" was added. This version of the CSA did not include a signature and was not sent in its entirety.

On December 29, 2008, CPS responded to Obregon by faxed letter stating that:

> In response to your letter received by fax at 4:56 p.m. on December 24, 2008, there has been no breach of any settlement agreement by my client. We were at all times after December 19, 2008, prepared to forward a check representing settlement of this matter to you upon receipt of the settlement agreement executed by your client. A copy of the check payable to you and your client dated December 16, 2008, is attached. Any delay in your client receiving the settlement fund prior to December 25, 2008, was solely as a result of absence of indication of approval of the settlement agreement sent to you via Federal Express on December 19, 2008.
>
> Please let me know whether you wish to proceed with the settlement and, if so, please provide me with a fax of the settlement agreement executed by your client to be followed by the original. Upon receipt of an executed agreement, I will forward the check. Otherwise, please let me know as soon as possible if your client has decided not to proceed with the settlement of this matter.

On December 29, 2008, Obregon responded that the "Rule 11 agreement provided that settlement funds were to be received by December 25, 2008," that "if [CPS] wanted to condition paying on receipt of a signed settlement agreement as a condition precedent, that language should have been included in the Rule 11 [agreement] and the Rule 11 [agreement] is devoid of any such requirement," and that "I stand by my prior demand. . . . That is, my client stands by the settlement, but calls your client in breach." On January 5, 2009, CPS received from Obregon a signed copy of the entire CSA with the two modifications: payment "within 20 days of Dec. 5, 2008" and "Plaintiff Obregon does not release breach of this agreement."[2]

On January 7, 2009, Obregon filed her third amended petition, wherein she dropped all previous claims and alleged only breach of contract.[3] On January 9, 2009, CPS filed a motion to enforce the settlement agreement. On January 28, 2009, Obregon filed a traditional motion for summary judgment on her breach of contract claim; the ground for Obregon's motion was that her evidence clearly established CPS's breach of the settlement agreement.[4] Also on January 28, 2009, CPS filed a counterclaim to Obregon's third amended petition, alleging that Obregon was in breach of contract. On February 18,

---

[2]The notarization of Obregon's signature on the CSA indicates it was executed on December 26, 2008.

[3]Obregon's claims against RGVM were severed from her cause of action against CPS and are not before this Court on appeal.

[4]In support of her motion, Obregon attached the following evidence: (1) CPS's motion to enforce the settlement agreement, which Obregon asserted contained judicial admissions by CPS; (2) the affidavit of Obregon's counsel, in which he describes his fees and attests that (a) CPS never made payment of $3,000, (b) CPS never tendered payment, (c) neither he nor his client rejected payment from CPS, and (d) he delivered a release from Obregon to CPS; and (3) attachments to the affidavit, including (a) Fax # 4, the counter-signed December 5, 2008 fax, (b) the December 24, 2008 letter from Obregon to CPS, and (c) the revised CSA, which Obregon signed and returned to CPS on January 5, 2009.

5

2009, CPS filed a traditional motion for summary judgment on its breach of contract claim; the ground for CPS's motion was that it established the elements of its breach of contract claim as a matter of law.[5] On September 2, 2009, the trial court entered a final judgment granting Obregon's motion for summary judgment and denying CPS's motion; ordered deletion of trade line from the credit report and release of any debt balance; and awarded $3,000.00 in damages and $8,500.00 in attorney's fees to Obregon. This appeal followed.

## II. TRADITIONAL SUMMARY JUDGMENT STANDARD OF REVIEW

We review the trial court's granting or denial of a traditional motion for summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Branton v. Wood*, 100 S.W.3d 645, 646 (Tex. App.–Corpus Christi 2003, no pet.). When reviewing a traditional summary judgment, we must determine whether the movant met its burden to establish that (1) no genuine issue of material fact exists and (2) the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Provident Life and Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003) (citing *Haase v. Glazner*, 62 S.W.3d 795, 797 (Tex. 2001)); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). In reviewing a traditional summary judgment, we consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in favor of the nonmovant. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007) (per curiam). "A party moving for summary judgment must establish its right to summary judgment on the issues expressly presented to the trial court by

---

[5]In support of its motion, CPS attached the following evidence: (1) Obregon's responses to CPS's requests for production, which included as attachments (a) copies of Faxes #1-4, (b) Obregon's December 24, 2008 faxed letter to CPS, (c) CPS's December 29, 2008 response to Obregon's December 24 letter, and (d) a copy of the revised CSA that Obregon signed and sent to CPS on January 5, 2009; (2) a copy of the December 29, 2008 fax from Obregon to CPS; and (3) affidavit of counsel for CPS regarding his fees.

6

conclusively proving all elements of its cause of action or defense as a matter of law." *Elliot-Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex. 1999) (citations omitted); *see also* TEX. R. CIV. P. 166a(b), (c). The summary judgment movant has conclusively established a matter if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

Ordinarily, when both sides move for summary judgment and the trial court grants one motion and denies the other, the court reviews the motions and all summary judgment evidence and renders the judgment that the trial court should have rendered. *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005) (per curiam); *Barrand, Inc. v. Whataburger, Inc.*, 214 S.W.3d 122, 129 (Tex. App.–Corpus Christi 2006, pet. denied) (citing *Comm'rs Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997)). "However, we may also reverse the judgment and remand the cause when we find that course proper." *K3 Enters. v. McDaniel*, 8 S.W.3d 455, 458 (Tex. App.–Waco 2000, pet. denied) (citations omitted).

### III. APPLICABLE LAW

A settlement agreement may be enforceable as a contract. *See Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 663 (Tex. 2009). In order to be considered enforceable as a contract, the settlement agreement must have complied with Texas Rule of Civil Procedure 11. *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995). Rule 11 states that "no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers . . . ." TEX. R. CIV. P. 11. In addition, a Rule 11 agreement follows the requirements of the statute of frauds, including the

allowance that a written memorandum need not be contained in a single document.  *See*

*Padilla*, 907 S.W.2d at 460.

If an agreement complies with Rule 11, then the party seeking to enforce the agreement may amend its pleading and add a breach of contract claim.  *See Mantas v. Fifth Court of Appeals*, 925 S.W.2d 656, 658 (Tex. 1996) (orig. proceeding) (per curiam). The essential elements for a breach of contract claim are the following:  (1) existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) a breach by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Sauceda v. GMAC Mortgage Corp.*, 268 S.W.3d 135, 140 (Tex. App.–Corpus Christi 2008, no pet.).

Under the doctrine of repudiation or anticipatory breach, a party's performance under a contract is excused if the opposing party has repudiated.  *Burford v. Pounders*, 145 Tex. 460, 199 S.W.2d 141, 144-45 (1947).  A repudiation or anticipatory breach occurs when a party absolutely repudiates the obligation, without just excuse, and the other party is damaged by the repudiation.  *Barrand, Inc.*, 214 S.W.3d at 140.  It is conduct that exhibits an unwavering intention to abandon, renounce, and refuse performance of the contract.  *In re Braddock*, 64 S.W.3d 581, 585 (Tex. App.–Texarkana 2001, no pet.); *Hauglum v. Durst*, 769 S.W.2d 646, 651 (Tex. App.–Corpus Christi 1989, no writ). Repudiation of a contract may consist of either words or actions by a party to a contract that indicate an intention that the party is not going to perform the contract according to its terms in the future.  *Hauglum*, 769 S.W.2d at 651.

## IV. ANALYSIS

To determine whether the competing motions for summary judgment on breach of contract were correctly disposed of, we must first decide whether Obregon, CPS, and RGVM entered into a valid and enforceable Rule 11 settlement agreement. *See Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex. 1987). Second, we must address whether the Rule 11 agreement, if any, is ambiguous. *Id.* If a valid, unambiguous Rule 11 agreement exists, we then review the merits of the competing summary judgment motions de novo. *Id.*

### A. The Rule 11 Agreement

Obregon attached to her motion Fax #4, the December 5, 2008 countersigned letter, as evidence of the parties' Rule 11 settlement agreement, apparently contending in her motion that it alone contained the material terms of the agreement. CPS contends that if Fax #4 is the entire Rule 11 agreement, then it fails to comply with general contract principles because the agreement lacks the mutual consideration that is necessary for a valid and enforceable contract. Rather, CPS contends that Fax #4 fails to comprise the entire Rule 11 agreement, which was instead negotiated through the series of faxed letters (Faxes #1-4) between December 4, 2008 and December 5, 2008. We agree with CPS.

The material terms in a settlement agreement are: (1) a promise to pay in an exchange for release of liability and (2) payment. *Padilla*, 907 S.W.2d at 461; *see Cherco Props., Inc. v. Law*, 985 S.W.2d 262, 266 (Tex. App.–Fort Worth 1999, no pet.); *see also Two Bros. Trucking v. Modine Mfg. Co.*, No. 13-07-00427-CV, 2009 WL 2192582, at *2 (Tex. App.–Corpus Christi July 23, 2009, no pet.) (mem. op.). Importantly, only Fax #1, the

9

original offer from RGVM and CPS on December 4, 2008, included that "[a] tri-party release will be executed by all." Thus, the countersigned letter alone does not contain the essential element of consideration—a promise to pay *in exchange* for a release of liability. Only when the faxed correspondences of December 4, 2008 and December 5, 2008, are read together as one written memorandum do they include the consideration and terms necessary for a valid contract based on a mutuality of obligations. *See ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc.*, 115 S.W.3d 287, 293 (Tex. App.–Corpus Christi 2003, pet. denied). Therefore, we conclude that the material terms of the parties' Rule 11 settlement agreement are contained not in Fax #4 alone, as argued by Obregon, but as set out in Faxes #1-4, the series of faxed transmissions between December 4, 2008 and December 5, 2008. *See Padilla*, 907 S.W.2d at 460 (a written memorandum need not be contained in a single document).

"A settlement agreement is a contract, and its construction is governed by legal principles applicable to contracts generally." *Donzis v. McLaughlin*, 981 S.W.2d 58, 61 (Tex. App.–San Antonio 1998, no pet.). Specifically, when construing a Rule 11 settlement agreement, we apply the principles of contract interpretation to determine ambiguity. *Padilla*, 907 S.W.2d at 460. If a contract is capable of more than one reasonable interpretation, it is ambiguous; if, however, the contract can be given a certain or definite legal meaning, then it is not ambiguous and we will construe it as a matter of law. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *see also Skulemowski v. Zavaletta*, No. 13-04-673-CV, 2007 WL 475319, at *4 (Tex. App.–Corpus Christi Feb. 15, 2007, pet. denied) (mem. op.). When a contract contains an ambiguity, the granting of a motion for

10

summary judgment is improper because the interpretation of the contract is a question of fact for the jury. *Reilly*, 727 S.W.2d at 529.

With regard to the interpretation of the Rule 11 settlement agreement at issue, the parties here contend—and we agree—that the agreement is unambiguous; they merely offer different interpretations of its meaning. *See Dynegy Midstream Servs., L.P. v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009) ("A contract is not ambiguous simply because the parties disagree over its meaning."). Obregon's interpretation is that payment of the settlement had to be made "within 20 days" of December 5, 2008. CPS's interpretation is that payment was to be made "within 20 days" of execution of the "tri-party release executed by all."

Our primary concern is to construe the contract to ascertain and give effect to the parties' intentions as expressed in the document. *Frost Nat'l Bank v. L&F Distributors, Ltd.*, 165 S.W.3d 310, 211-12 (Tex. 2005). To determine parties' intentions, courts consider the entire writing, seeking to harmonize and give effect to all contractual provisions. *Hofland v. Fireman's Funds Ins. Co.,* 907 S.W.2d 597, 599 (Tex. App.–Corpus Christi 1995, no writ). The language used by the parties is to be given its plain, grammatical meaning unless it appears that to do so would defeat the parties' intentions. *Lyons v. Montgomery*, 701 S.W.2d 641, 643 (Tex. 1985).

Based on our examination of the series of faxed letters that form the Rule 11 agreement, we conclude that the settlement agreement can be given a definite legal meaning and thus construed as a matter of law. *See Coker*, 650 S.W.2d at 393. The "payable within 20 days" term of the agreement does not render it ambiguous. *See Shaw*

11

*v. Kennedy, Ltd.*, 879 S.W.2d 240, 246 (Tex. App.–Amarillo 1994, no writ) (holding that time of performance is not a material term of an agreement). Rather, it is clear that the parties intended to settle the lawsuit by CPS and RGVM providing payment of "$12,500.00 plus deletion of trade line/clearance/release of any debt balance" in exchange for release of liability via the "tri-party release . . . executed by all."

### B. Obregon's Motion for Summary Judgment

We have determined the existence of a valid contract and will assume, without deciding, that Obregon showed performance or tendered-performance and damages. Nonetheless, we conclude that Obregon cannot show a breach by CPS. *See Sauceda*, 268 S.W.3d at 140. Obregon's motion for summary judgment was based on an interpretation of the Rule 11 settlement agreement that considered a breach to have occurred if actual payment was not made "within 20 days" of December 5, 2008. However, because the agreement did not stipulate that time was of the essence, Obregon's interpretation is erroneous. *See Shaw*, 879 S.W.2d at 246.

Generally, time of performance is not a material term of an agreement and "any intention to make time of the essence must be clearly manifested in the contract." *Id.* "The fact that [a] contract states a date for performance does not, of itself, mean that time is of the essence." *Argos Res., Inc. v. May Petroleum Inc.*, 693 S.W.2d 663, 664-65 (Tex. App.–Dallas 1985, writ ref'd n.r.e.) (quoting *Laredo Hides Co., Inc. v. H & H Meat Prods. Co., Inc.*, 513 S.W.2d 210, 217 (Tex. App.–Corpus Christi 1974, writ ref'd n.r.e.)). In order to make time of the essence, a contract must so provide by express stipulation or there must be something in the nature of the subject matter or connected with the purpose of the

12

contract and the circumstances surrounding it which makes it apparent that the parties intended that the contract be performed at or within the time specified. *Laredo Hides Co., Inc.*, 513 S.W.2d at 216.

When time of performance is not stipulated, the law will imply a reasonable time. *Moore v. Dilworth*, 142 Tex. 538, 179 S.W.2d 940, 942 (1944); *see Fitzsimmons v. Anthony*, 716 S.W.2d 719, 720 (Tex. App.–Corpus Christi 1986, no writ) (agreeing with the trial court that "in the absence of 'time of the essence' provisions and stipulated performance dates, parties are entitled to a reasonable time to perform their part of the contract"). After reviewing the parties' Rule 11 settlement agreement, we find nothing in the nature of the subject matter connected with settlement or the circumstances surrounding the agreement that make it apparent that the contract needed to be performed at or within the time specified.[6] *See Laredo Hides Co., Inc.*, 513 S.W.2d at 216. Thus, time of performance by CPS was implied as a reasonable time, and CPS did not breach the parties' Rule 11 settlement agreement by failing to make actual payment on December 24, 2008. *See Fitzsimmons*, 716 S.W.2d at 720.

Time was not of the essence; therefore, a lack of actual payment "within 20 days" from the December 5, 2008 agreement did not constitute a breach. We hold the trial court erred in granting Obregon's motion for summary judgment because she did not

---

[6]We note that Obregon's December 24, 2008 letter to CPS includes the following statement: "As you are aware, one inducement for [Obregon] to settle was the promise of payment of $12,500.00 by December 25, 2008." In her brief, Obregon implies, though never directly states, that this—i.e., payment by Christmas—was a circumstance indicating that time was of the essence. We do not believe, however, that this one line in a letter that does not form any basis of the contract indicates a "manifest[ation] of intention" at the time of the contract that all parties "desired time of payment to be vital or that late payment would be ground for cancellation." *Laredo Hides Co., Inc. v. H & H Meat Prods. Co., Inc.*, 513 S.W.2d 210, 218 (Tex. App.–Corpus Christi 1974, writ ref'd n.r.e.).

13

conclusively prove an essential element of her claim as a matter of law. *See Elliot-Williams Co.*, 9 S.W.3d at 803; *see also* TEX. R. CIV. P. 166a(b), (c). We sustain CPS's first issue on appeal.

### C. CPS's Motion for Summary Judgment

For CPS to prevail on its motion for summary judgment, it must establish that no material fact issues exist on its breach of contract claim and must conclusively prove all elements of breach of contract as a matter of law. *See* TEX. R. CIV. P. 166a(b), (c); *Elliot-Williams Co.*, 9 S.W.3d at 803; *Sauceda*, 268 S.W.3d at 140. As previously discussed, the parties had an enforceable contract based on the series of faxed letters between December 4, 2008 and December 5, 2008, that comprised the Rule 11 settlement agreement. *See Padilla*, 907 S.W.2d at 460. Thus, the first element has been satisfied.

It is also clear that CPS showed it satisfied its obligation to tender performance by being "ready, willing, and able to make payment" to Obregon. *See Perry v. Little*, 419 S.W.2d 198, 200 (Tex. 1967); *Sauceda*, 268 S.W.3d at 140. CPS was not required to make actual presentment and payment of $3,000.00 "within 20 days" of December 5, 2008 because it was not stipulated that time was of the essence. *See Shaw*, 879 S.W.2d at 246. In addition, the nature of the Rule 11 agreement involved concurrent consideration; CPS's obligation for tender of performance was to make clear to Obregon that CPS was willing and able to deliver the $3,000.00. *See Perry*, 419 S.W.2d at 200 ("[I]f the contract contemplates concurrent acts, it is sufficient to put one party in default [if] the other party is ready, willing, and offers to perform his part of the contract . . . . The actual production of the . . . thing which the [party] is to give is . . . unnecessary."). CPS provided evidence

14

in its motion for summary judgment that on December 29, 2008, CPS indicated in its faxed letter its willingness to tender performance in exchange for release. It is undisputed that Obregon refused to accept payment and instead filed a breach of contract action against CPS. Thus, CPS satisfied the second element of its breach of contract claim.

With regard to the third element, CPS argues that Obregon breached the parties' Rule 11 settlement agreement by repudiation when Obregon faxed the December 24, 2008 letter that stipulated "your client did not pay per the agreed time deadline, and we therefore consider your client in breach in the amount of $3,000.00. . . . We will release such claim if the sum of *$3,500.00* is received on or before December 31, 2008." (Emphasis added.) CPS argues that Obregon repudiated by increasing the settlement sum an additional five-hundred dollars, thus indicating to CPS that Obregon did not intend to perform the contract according to its terms in the future. *See Hauglum*, 769 S.W.2d at 651. We agree.

When Obregon insisted on additional payment in exchange for release of liability, she changed a material term of the settlement agreement. *See Padilla*, 907 S.W.2d at 461. Obregon's conduct indicated an intention to abandon, renounce, and refuse performance of the contract as to the agreed-upon material terms of the agreement. *See In re Braddock*, 64 S.W.3d at 585; *Hauglum*, 769 S.W.2d at 651. "When one party materially breaches a contract, the nonbreaching party is forced to elect between two courses of action, i.e., continuing performance or ceasing performance." *Kennedy Ship & Repair, L.P. v. Phan*, 210 S.W.3d 11, 25 (Tex. App.–Houston [14th Dist.] 2006, no pet.); *see Chilton Ins. Co. v. Pate & Pate Enters, Inc.*, 930 S.W.2d 877, 887-88 (Tex. App.–San Antonio 1996, writ denied). CPS chose to continue performance and informed Obregon

15

of its intention in the December 29, 2008 faxed letter stating that "there has been no breach of any settlement agreement by my client. We were at all times . . . prepared to forward a check representing settlement of this matter to you upon receipt of the settlement agreement executed by your client." CPS was thus willing and able to perform. *See DiGiuseppe v. Lawler*, 269 S.W.3d 558, 593-94 (Tex. 2008).

In response to CPS's December 29, 2008 fax, Obregon alleged breach, demanded an increase of the settlement amount agreed to in the Rule 11 agreement, and notified CPS that two changes had been made on the CSA. CPS received a signed copy of the altered CSA on January 5, 2009. However, agreement to the two modifications to the CSA—that payment must be made "within 20 days of Dec. 5, 2008" and that "Plaintiff . . . does not release breach of this agreement"—would have forced CPS to admit that it breached the contract because twenty days from December 5, 2008 had already passed. Obregon's insistence on additional language that would force breach by CPS is further evidence of repudiation. *See Hauglum*, 769 S.W.2d at 651. Thus, CPS established the third element.

However, CPS failed to conclusively prove the fourth and final element of its claim—damages as a result of the breach by Obregon. In its brief, CPS claims that it is entitled to specific performance "by entry of an order requiring Obregon to execute a 'tri-party release.'" Although in an action for breach of contract, a plaintiff can sometimes elect an equitable remedy such as specific performance, *see Stafford v. S. Vanity Magazine, Inc.*, 231 S.W.3d 530, 535 (Tex. App.–Dallas 2007, pet. denied) (citing *Kress v. Soules*, 261 S.W.2d 703, 704 (Tex. 1953)) (other citations omitted), this statement in CPS's

appellate brief is its first mention of any injury other than attorney's fees incurred as a result of Obregon's breach.  In its counterclaim, CPS alleged the following:

> Plaintiff's failure to comply with the settlement agreement reached between the parties has caused damages to CPS.  In particular, CPS has been forced to expend attorney's fees to prepare and file a Motion to Enforce Settlement Agreement and this Amended Counter-claim.  It is anticipated that additional sums will be expended enforcing the settlement agreement.

In its motion for summary judgment, CPS claimed the following:

> CPS has suffered damages due to Plaintiff's breach of the December 4-5 Agreement by continuing to incur expenses for attorney[']s fees in this action.  Had Plaintiff performed in accordance with the Dec. 4-5 Agreement, these additional attorney[']s fees would have been avoided.  CPS incurred attorney's fees in the amount of $13,500 as a result of Plaintiff's failure to abide by the December 4-5 Agreement. . . .

> . . . In summary, CPS established the elements of its breach of contract claim by . . . establishing [(1) a valid contract, (2) tendered performance, (3) breach, and (4)] damages by the fact that it has incurred substantial attorney[']s fees in this matter . . . .

Finally, CPS did not argue at any of the various hearings on the motion to enforce and motions for summary judgment that it suffered any injury as a result of Obregon's breach other than the incurring of attorney's fees.

"Attorney's fees are ordinarily not recoverable . . . as actual damages in and of themselves."  *Haden v. David J. Sacks, P.C.*, 222 S.W.3d 580, 597 (Tex. App.–Houston [1st Dist.] 2007), *rev'd on other grounds*, 266 S.W.3d 447 (Tex. 2008) (citing *Tana Oil & Gas Corp. v. McCall*, 104 S.W.3d 80, 81-82 (Tex. 2003); *Qwest Commc'ns Int'l, Inc. v. AT&T Corp.*, 114 S.W.3d 15, 32-33 (Tex. App.–Austin 2003), *rev'd in part on other grounds*, 167 S.W.3d 324 (Tex. 2005)).  A party "rel[ying] on assertions of non[-]recoverable damages" alone, such as attorney's fees and expenses sustained in defending

17

a lawsuit and prosecuting a counterclaim, has presented a legal barrier to any recovery on its suit for breach of contract. *See id.* (citations omitted). This is true even if all other elements of the claim are proven. *See Tana Oil & Gas Corp.*, 104 S.W.3d at 82.

Here, CPS claimed no damages other than the attorney's fees it incurred as a result of Obregon's breach, and we cannot consider CPS's assertion on appeal that it was entitled to the equitable remedy of specific performance because it did not present the issue to the trial court. *See* TEX. R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993) ("A motion must stand or fall on the grounds expressly presented in the motion."). Because the only form of actual damages sought by CPS in its counterclaim was unrecoverable, *see Haden*, 222 S.W.3d at 597, CPS is unable to prove the final element of its breach of contract counterclaim and was not entitled to summary judgment. *See Elliot-Williams Co.*, 9 S.W.3d at 803; *see also* TEX. R. CIV. P. 166a(b), (c). The trial court therefore did not err in denying CPS's motion for summary judgment. We overrule CPS's second issue.

Having determined that the trial court erred in granting Obregon's motion for summary judgment but did not err in denying CPS's motion, both parties' causes of action remain live, and remand is the proper disposition of this appeal. *See K3 Enters.*, 8 S.W.3d at 458. Because we are remanding for further proceedings, we do not reach CPS's third issue regarding attorney's fees. *See* TEX. R. APP. P. 47.1.

18

## V. Conclusion

We reverse the judgment of the trial court granting Obregon's motion for summary judgment; affirm the judgment of the trial court denying CPS's motion for summary judgment; and remand for further proceedings consistent with this opinion.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the 4th
day of November, 2010.